DAVID A. HANCOCK, Respondent, v. CHARLES BUCKLEY, Appellant.

Kansas City Court of Appeals, June 15, 1885.

1. PRACTICE—PLEADINGS AND PROOF MUST CORRESPOND.—There can not be a suit upon one cause of action and a recovery on another. But there is difficulty in applying the rule. In this case plaintiff agreed to "furnish" defendant pasturage from April to October, and did put him in possession by allowing him use of pasturage ground of sufficient quantity and quality. We think this was furnishing the pasturage as contemplated by the petition.

2. —— VERDICT—SURPLUSAGE DISREGARDED.—Where the verdict of a jury finds on the issues, and also superadds something not submitted to them (as, for instance dividing the costs), the verdict is good, notwithstanding the addition of matters not in issue, which last is merely void, and will be disregarded as surplusage. Following *State ex rel. Webster v. Haight*, 46 Mo. 83.

APPEAL from Saline Circuit Court, HON. E. L. EDWARDS, J.

*Affirmed.*

Statement of case by the court.

The plaintiff sued defendant for failure and refusal to pay him for pasturage furnished from April 15 to October 9, 1882, for the grazing of sixty head of cattle, at 55 cents per head per month. Plaintiff's evidence tended to show that he contracted to furnish pasturage for the cattle, for the season, or so long as they did well, at the rate aforesaid. That the cattle were turned into the pasture April 15, 1885, and kept there till the 15th of June following, when defendant took them away. That the grass was good during the season and amply sufficient to sustain the cattle, with all others which he had permitted to be turned into the pasture. That he took the other cattle in also, but at no time during the season did he permit enough of other cattle to be turned in to have prevented a sufficiency for defendant's.

Plaintiff's petition is as follows: That about the 10th day of April, 1882, he being in the possession of a large tract of enclosed pasture, or grass land, in the county of Pettis, in this state, that defendant entered into a contract with plaintiff, whereby it was agreed between them that plaintiff should furnish to defendant, upon said grass or pasture land, grazing for sixty head of cattle, from the 15th day of April, 1882, until the end of the grazing season of 1882, or as long as there should be upon said land a sufficient quantity of good grass for the grazing of said cattle; the defendant to put said sixty head of cattle on said land and keep them there as long as the grass should be good and sufficient during said grazing

season of 1882, and pay plaintiff therefor the sum of fifty-five cents per head for said cattle per month, the money to be paid at the end of the season, or when the grass should fail. That in pursuance of said agreement, the defendant, on the said 15th day of April, 1882, placed in the plaintiff's said pasture the said sixty head of cattle, and that from that day until the 9th day of October, 1882, plaintiff *furnished* good grass in abundance for all said sixty head of cattle ; that, afterwards, plaintiff demanded of defendant, for the pasture of said cattle, the sum of one hundred and ninety-one and forty-one hundredths dollars, the amount due the plaintiff for the *pasture of said cattle* under said agreement ; but that defendant fails and refuses to pay the same, and no part thereof has been paid. Plaintiff asks for judgment for $191 40-100, and interest.

Defendant objected to any testimony as to the condition of the pasture after June 15, when he took the cattle away, for the reason that as "plaintiff has only sued for pasturage actually furnished to defendant and not for damages for breach of contract, for failure of defendant to use and graze such grass." This objection, and other similar ones, being overruled, defendant excepted. Instructions were refused for defendant on the same theory of his objection to the testimony. The jury returned into court the following verdict: "We, the jury, find for the plaintiff $125.40, dividing entire costs equally between the parties.—W. B. Laurie, Foreman." Afterwards, plaintiff filed a motion to enter a regular judgment on the verdict and for costs, treating that portion of the verdict as to costs as of no effect. Judgment was accordingly entered.

WALLACE & CHILES, for appellant.

I. The court erred in overruling the objections of the defendant to the evidence of witnesses offered by plaintiff to prove the quality and sufficiency of the grass in plaintiff's pasture after June 15, 1882. The suit is for pasturage *furnished* to defendant, under an alleged con-

tract, between April and October, 1882, and it was incompetent for plaintiff, after showing that he had furnished no grass after June 15, 1882, to offer evidence of the condition or sufficiency of the grass after that time, with a view of recovering therefor after such date. A party can not sue upon one cause of action and recover for another. *Clements v. Yeates*, 69 Mo. 623 ; *Ensworth v. Barton*, 60 Mo. 511 ; *Eyerman v. Cemetery Association*, 61 Mo. 489. A party can not declare on a contract and recover on a *quantum meruit*. And, for the same reason, he can not declare for a cause of action *ex contractu* and recover on a cause of action *ex delecto*. Same authorities ; also, *Huston v. Scale Works*, 56 Mo. 416 ; *Harris v. Railroad Co.*, 37 Mo. 397 ; *Waldhier v. H. & St. J. Railroad*, 71 Mo. 514 ; *Buffington v. Railroad*, 64 Mo. 246 ; *Beck v. Ferrara*, 19 Mo. 30 ; *Link v. Vaughan*, 17 Mo. 585.

II.    If incongruous causes of action cannot be united in one count of a petition, much less can a cause of action different from that alleged be made merely by *evidence and instructions*. *Duncan, adm'r, v. Fisher*, 18 Mo. 403 ; *Jamison v. Cipher*, 35 Mo. 483 ; *Parker v. Rhodes*, 79 Mo. 88 ; Bliss on Code Pleading, part I, sect. 112–120, note 1.

III.    The court erred in the instructions given for plaintiff [which predicate the averments of the petition as true, and assert right of recovery, *notwithstanding* the taking of the cattle out before the end of the season]. These instructions, in effect, direct the jury to entirely ignore and disregard the fact that defendant's cattle were taken out of plaintiff's pasture at the end of two months. They authorize the jury to find for plaintiff for grass and pasturage *not furnished* to, received, or used by defendant for nearly four months after June 15, 1882. These instructions were erroneous for the same reason that such evidence complained of by defendant was improperly admitted. See authorities cited in point I of this brief. The jury was manifestly misled by such improper evidence, and improper instructions predicated therein.

IV.    The court also manifestly erred in sustaining

the motion of plaintiff for the whole amount specified in the verdict of the jury, *and for all costs.* The verdict was as follows: " We, the jury, find for the plaintiff one hundred and twenty-five and forty one-hundredths dollars *dividing the entire costs equally between the parties.*" The plaintiff made no objection to the verdict when it was received by the court and the jury discharged, thus *acquiescing in the same and its terms.* The court also erred in overruling the motion of defendant for new trial, and in arrest of judgment. See *Bagby v. Emberson*, 79 Mo. 139; *State ex rel., etc., v. Rombauer*, 44 Mo. 590.

V. The statute providing for the granting of new trials comprehends such cases as this. The verdict, on its face, as matter of law, shows that the jury made a "mistake" as to their powers and duties in providing for an equal division of the costs between the parties. As defendant did not and has not objected to the provisions of the verdict in regard to the division of costs, he was guilty of no negligence in failing to object to same when received by the court; but plaintiff is estopped to object after the jury was discharged. *Pope v. Mooney*, 40 Mo. 104; *State ex rel., etc., v. Rombauer*, 44 Mo. 590; *Fredwell v. Laffoon*, 77 Mo. 26; *Savoni v. Brashear*, 46 Mo. 345; *Tucker v. Railroad*, 54 Mo. 177.

VI. As to the propriety and effect of the *affidavit* of jurors—not to *impeach* but to show a " *mistake* " in the verdict as to the costs, and their belief in their powers when uninstructed as to the law, the common law doctrine is thus declared: " The better opinion is, that the *affidavits* of jurors are not to be received to impeach a verdict, but they may be admitted in exculpation of the jurors, and in *support* of their verdict." *Dana v. Tucker*, 4 Johnson (N. Y.) 487.

No brief on file for respondent.

Opinion by ELLISON, J.

Defendant's objection is that as plaintiff's petition is for *furnishing* him pasture for his cattle, during the season, from the middle of April till about the middle

of October, and the proof was that he put his cattle in on April 15, and took them out on June 15, following, plaintiff did not furnish him pasture longer than June 15. And that, under the petition, his recovery ought to have been limited to the contract price up to June 15, and not afterwards. That if further recovery was sought plaintiff should have asked, in a separate count, for damages on account of defendant's failure to use the pasture.

There is no doubt that there can not be a suit upon one cause of action and a recovery on another; the number of adjudications on this subject, in this and other courts, makes this a familiar rule. But it is not a question of easy solution, often, as to what cases will fall within that rule. The one before us is not without difficulty. It turns really upon the word "furnish." Plaintiff agreed to furnish him pasturage from April till October, and did put him in possession of the pasture by allowing, or having him turn in on April 15, and seeing that the pasturage, in quantity sufficient, was there till October. This, we think, was furnishing the pasturage as contemplated by the petition. In effect, plaintiff, on April 15, the day defendant turned in, says to him, here is the pasture I agreed to furnish you for this season; I now furnish it to you : I turn it over to you.

The fact that after having it furnished to him he refused to make use of it for the full time, can make no difference. This case must be looked at from the standpoint of its own facts and circumstances. It is not like a case where a man might agree to furnish, on demand, things not yet in his possession or in existence perhaps; for here plaintiff did absolutely furnish the pasture, and defendant took possession of it. Of course, plaintiff did not, on April 15, bodily turn over to defendant, grass, then grown, sufficient to sustain his cattle during the season, but he did turn over to him the growing grass, and the land upon which it grew, and in nature would continue to grow.

It can not be objected to this view of "furnish" that, if he furnished to defendant when he turned

it over to him in April, he might have sued or demanded the money of him then and there, for, under the contract, defendant was to pay at a certain rate per month, "the money to be paid at the end of the season, or when the grass should fail." And there was a contingency in the contract stated in the petition of the length of time, which, in nature, he would be able to use the pasture so furnished.

If one should agree to "furnish" another, for one year, forty acres of land to put in corn, and twenty acres of pasture land for his teams, and put him in possession of it, but at the end of six months the lessee quits the place, has not the one performed his contract? Has he not furnished him the land, and can he not sue squarely on the contract, alleging his own performance, and the other's failure to pay?

We do not believe the allegation of the cause of action, to which the proof was directed in this case, was unproved "in its entire scope and meaning," as contemplated in section 3702, Revised Statutes, 1879.

The second point must, likewise, be ruled against defendant. That part of the verdict of the jury dividing the costs between the parties, was wholly outside of the issues submitted to them, and was properly treated as surplusage by the court.

In the case of *Marquand v. Wheeler* (52 Cal. 445), the jury returned a verdict for plaintiff for thirty-five hundred dollars "in gold coin." In that case it is held the jury's adding "in gold coin" to the verdict was of no legal consequence, and judgment should have been entered disregarding the mere character of the money. This decision was at a time when the difference in legal tender and gold coin, made a difference of several hundred dollars. To the same effect are *Watson v. Ry. Co.* (50 Cal. 523); *Chamberlain v. Vance* (51 Cal. 85.)

In the case of *State ex rel. Webster v. Knight* (46 Mo. 83), the jury returned the following verdict: "We, the jury, find a verdict for defendants, they to pay the costs of this suit." The court says of this that "the

jury found for defendants; the verdict was good and complete. The matter of costs was not in issue, and was not submitted to them. That part of their verdict, therefore, was merely void, and should have been disregarded as surplusage.''

Although this was a mandamus proceeding, we think it fully applicable to the status of this case. The fact that the supreme court ordered the writ to issue commanding the circuit court to enter the verdict as a simple finding for defendant, but gave plaintiffs leave to file their motion for new trial in the same manner as if the verdict had been received and entered at the proper time, we do not conceive to be an intimation as suggested by counsel, that a new trial should be granted because of the verdict being framed as it was, but rather, as the regular time had passed for plaintiffs to file their motion, on account of the mandamus proceedings intervening, the court was simply still holding open to them that right, if from any cause which took place at the trial, they desired to appeal.

We think the judgment should be affirmed, and it is so ordered. All concur.

### MOTION FOR REHEARING.

*Per Curiam.*—The appellant asks for a rehearing in this case, based on the grounds, first, that the court misconceived the law as to the proper construction of the contract in question; and, second, as to the alleged error of the trial court in entering up judgment on the verdict.

As to the first ground, we think the suggestions made in the motion for rehearing are fully met by the opinion of Ellison, J., filed herein. We adhere to that construction.

As to the second point made in the motion the appellant insists that this court misconceived the ground on which he assails the action of the trial court. He claims that the verdict of the jury, in the form in which it was returned, was the result of a mistake, and that the jury would not have returned a verdict for the plaintiff at all but for their belief that they had a right, under the law,

to so apportion the costs; and, therefore, the judgment entered up by the court, is not, in fact, the verdict of the jury.

The inquiry naturally arises, how is the court to ascertain the existence of the fact thus alleged to have influenced the minds of the jurors?

No rule of law and practice is better settled than that the proper evidence of what the jury does decide is the verdict returned by them upon oath, and affirmed in open court. On the verdict returned into court in this case, the law, as shown in the opinion herein, required the court, without more, to treat so much of it as undertook to divide the costs between the litigants, as outside of the province of the jury, and, therefore, mere surplusage, to be rejected by the court in entering up judgment.

The appellant, recognizing the necessity laid upon him to show, *aliunde*, the mistake, or the influence, operating upon the minds of the jurors, in arriving at their conclusion, introduced the affidavits of the jurors to show that they thought they had a right to so apportion the costs, and that but for such impression they would not have voted for the verdict.

Counsel for appellant assumes that the affidavits are competent for such purpose, as supporting, and not impeaching, the verdict. This position, we think, is not tenable. No rule of practice is more firmly rooted, founded, as it is, on the highest principles of policy, than that the deliberations, the discussions and reasonings of the jury in their retirement, belong to the secrets of the jury room, and are inviolable. This question is ably discussed, and the authorities reviewed, in *Woodard v. Leavit* (107 Mass. 453), *et seq.;* from which the following principles are deducible: The decisive reasons for excluding the testimony of the jurors to the motives and influences which affected their deliberations, are equally strong, whether the evidence is offered to impeach or to support the verdict; after the return of the verdict into open court, and its affirmance, no statement or testimony of a juror can be admitted as to the motives or

influences by which their deliberations were governed; nothing which transpired in the jury room, by which the jury reached an agreement, or the grounds upon which they found the verdict, can be disclosed by them as the basis for a new trial.

The authorities amply support the decision. In *State v. Underwood* (57 Mo. 52), our supreme court say : "The rule is perfectly settled, that jurors speak through their verdict, and they cannot be allowed to violate the secrets of the jury room, and tell of any partiality or misconduct that transpired there, nor speak of the motives which induced or operated to produce the verdict. But they may testify, in support of their verdict, that no disturbing influence was brought to bear upon them, and that they were not interfered or tampered with ;" citing *Woodard v. Leavitt, supra.*

The affidavits of the jurors offered by appellant herein come clearly within the rule of inadmissibility above laid down. The motion for rehearing is overruled. All concur.