ARTHUR C. BUTTRON et al. v. JOHN C. BRIDELL et al.; CITY OF ST. LOUIS, Appellant.

Division One, May 31, 1910.

1. NEGLIGENCE: Lime Pit in Street: Attractive to Children Playing About Same. Testimony that children had been seen playing about the lime pit erected in the public street was competent, in the suit against the city for the death of a child who fell into the pit and was scalded to death, to show that the pit and its surroundings were attractive to children.

2. ——: ——: ——: ——: Judicial Notice. But independent of that the court will take judicial notice that a lime pit thirty feet long, in which lime is being slacked, erected in the public street of a large city, is attractive to children. It is a matter of common knowledge, and need not be proven.

3. ——: ——: ——: ——: **Instruction.** And the court does not err in submitting to the jury, as one of the issues in the case, the question of whether or not children were accustomed to play near and around the lime pit erected in the public street.

4. ——: ——: **Dangerous: Admitted by Pleading.** Where the answer pleads that the deceased child, who fell into a large lime pit in the public street and was scalded to death, had been warned to stay away from the pit on account of its dangerous condition and that his parents were guilty of contributory negligence in not having cautioned him of the dangers, defendant necessarily admitted the pit was dangerous, and it was unnecessary to prove it was.

5. ——: ——: ——: **Matter of Common Knowledge: Proof.** Every one knows that a large lime pit, erected in the public street of a great city, for slacking lime, filled with a boiling mass of lime and water, uncovered and unguarded, around and on which it is known children have been and will continue to play, is a dangerous thing to children, and it is unnecessary to prove it; but no error was committed in permitting witnesses to testify it was dangerous.

6. ——: ——: **Notice to City: Permit to Contractor: Instruction.** The granting of a permit to a contractor by the city to erect a large lime pit in the public street, to be used in connection with the construction of buildings on abutting property, brings home to the city knowledge of the use to which the pit is to be applied; and the city is not entitled to an instruction telling the jury that it would not be guilty of negligence in failing to cover or cause to be covered the pit, until after it knew, or by the exercise of ordinary care could have known, that the same had been, on the evening in which the child fell into it, left filled with lime so heated as to be productive of injury to persons coming in contact therewith.

7. **VERDICT: Dividing Damages Among Tortfeasors: Surplusage: Amendment.** The suit was for damages against two tortfeasors, and the jury used the form furnished by the court in these words: "We the jury in the above entitled cause find the issues herein joined in favor of the plaintiffs and assess their damages at the sum of $1700;" to which the jury added, "to be paid in equal amounts of $850 by defendants." The court refused to receive the verdict in the form offered, and handed it to the foreman, saying, "Gentlemen, your verdict is not in proper form; you will use one of the forms given you by the court." Thereupon, the foreman, in the presence of the court and without a retirement of the jury, erased the words "to be paid in equal amounts of $850 by the defendants," and

the court accepted the verdict as amended. *Held,* that the words erased were mere surplusage, that it was not in the province of the jury to divide the damages among defendants, and the court did not err in permitting the amendment to be made in the manner it was made.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

AFFIRMED.

*L. E. Walther, B. H. Charles* and *Wm. E. Baird* for appellant.

(1)  The evidence must be confined to the issues raised by the pleadings, and it is not competent to prove a given condition or quality at a given time by evidence of incidents occurring prior to that time. Gable v. Kansas City, 148 Mo. 470; Hannibal v. Richards, 35 Mo. App. 15; Calcaterra v. Iovaldi, 123 Mo. App. 347.  (2)  Opinion evidence is inadmissible upon a subject upon which the jury may judge quite as well as the witness.  Hurst v. Railroad, 163 Mo. 320; Benjamin v. Railroad, 133 Mo. 289; Koenig v. Depot Co., 173 Mo. 721; Brown v. Railroad, 89 Mo. 155.  (3)  The instructions must submit to the jury only the issues of fact raised by the pleadings and evidence; hence it was error to submit the question whether or not "children were accustomed to play near the lime pit." ˙Glass v. Gelvis, 80 Mo. 297; Ely v. Railroad, 77 Mo. 34; Kingman v. Buggy Co., 150 Mo. 282; Whitlock v. Appleby, 49 Mo. App. 295.  A municipal corporation is liable for failure to keep its streets in reasonably safe condition only upon the ground of negligence, and negligence can be imputed to it only after notice of the defect or dangerous condition, and then only after a reasonably sufficient time has elapsed within which it may remedy the defect.  Baustian v. Young, 152 Mo. 317; Gerber v. Kansas City, 105 Mo. App. 191; Fehlbauer v. St. Louis, 178 Mo. 635.

The verdict should represent the well-considered judgment of the jury, and any change made therein by the court or any of the jurors which changes the expressed intent of the jury vitiates the verdict, unless the jury consent to such change. Oersteeg v. Paint Co., 106 Mo. App. 257; Hartman v. Railroad, 48 Mo. App. 619; Henley v. Arbuckle, 13 Mo. 147; Nicholson v. Rombauer, 44 Mo. 590.

*John P. Leahy* and *Joseph Wheless* for respondents.

(1) The defendant city having issued a permit for the placing of the lime pit obstruction in the street, is liable for its condition without notice. "The principle is well settled that a city, which authorizes excavations in its streets, is not entitled to notice of the dangerous condition in which they have been left, in order to hold it liable for injury to third persons occasioned thereby." Benjamin v. Railroad, 133 Mo. 285; Straub v. St. Louis, 175 Mo. 421; Lindsay v. Kansas City, 195 Mo. 178; Benjamin v. Railroad, 133 Mo. 285; Haniford v. Kansas City, 103 Mo. 181; Russell v. Columbia, 74 Mo. 480; Wiggins v. St. Louis, 135 Mo. 558; Stout v. Railroad, 17 Wall. (U. S.) 657; Davenport v. Hannibal, 108 Mo. 477; Stephens v. Macon, 83 Mo. 357; Drake v. Kansas City, 190 Mo. 388. (2) The verdict as first returned by the jury was complete, and the clause in regard to dividing payment between the defendants was surplusage. The court properly directed the jury to return the verdict in proper form. "Before a verdict, whether oral or sealed, is recorded, and the jury have been dismissed from their relation as such to the case, the court has power to require them to reconsider their verdict, not merely to correct a mistake in form or make that plain which was obscure, but to supply what is wanting, or to alter it in

substance, if they so agree." Abbott's Civil Trial Brief, 537; Hancock v. Buckley, 18 Mo. App. 465; Hill v. Bank, 100 Mo. 238; Spring Co. v. Tool Co., 103 Mo. App. 109; Ver Steeg v. Paint Co., 106 Mo. App. 287; Cattell v. Publishing Co, 88 Mo. 359; Gurley v. O'Dwyer, 61 Mo. App. 348; Kreibohm v. Yancey, 154 Mo. 82; Ranney v. Bader, 48 Mo. 541; Hartman v. Railroad, 48 Mo. App. 625; Gaither v. Wilmer, 5 L. R. A. (Md.) 756, note.

WOODSON, J.—This suit was brought by the plaintiffs to recover of the defendants the sum of $5000 damages for their alleged negligence in maintaining in one of the public streets of the city of St. Louis an illegal obstruction, namely, a lime pit filled with hot lime, into which their son, nine years of age, fell and was scalded to death. A trial resulted in a judgment for the plaintiffs for the sum of $1700, from which the defendants appealed.

The petition was in the usual form, with the following charge of negligence, as appears in the respondents' statement of the case:

"Defendants are charged with negligence 'in failing to provide covering for said pit, and proper and necessary guards around the same;' and are further charged with negligence, in that a loose board was left lying in such a way that one end rested on the street and the other end projected over the lime pit, 'and furnished a means of ascending from said street to the top of said pit;' that these conditions were highly dangerous and were attractive to children lawfully on the said street and playing in the vicinity thereof; that these conditions had existed for such a length of time that the defendant knew or by the exercise of ordinary care could have know of the same; that plaintiffs' child, nine years of age, while playing in the street was attracted to the lime pit, ascended the loose board and

fell into the boiling slacked lime, and was scalded to death. ''

The answer was a general denial, and that deceased had been warned to keep away from the pit, and a plea of contributory negligence on the part of the plaintiffs for not cautioning the boy against the dangers of the pit.

The facts are few and are practically undisputed. Under a permit duly issued by the city, the defendant Bridell constructed and maintained for twelve days, in one of the public traveled streets of that city, a lime pit, about thirty feet in length, extending into the street a few feet beyond the center line thereof. The pit was several feet deep and was used for slacking lime, which was mixed in a box erected over the pit, from which the boiling mixture ran into and remained in the pit. The pit was left uncovered, and no guards were erected to protect pedestrians on the street from running against or from falling into it. The pit had been used for slacking purposes for several days prior to the accident.

The plaintiffs' evidence, in addition, tended to show that they were husband and wife, and that the deceased was their minor son; that a loose plank was permitted to rest with one end on the street and the other projected upward and over the open lime pit, which furnished an easy means of ascent from the street to the top of said box; that the place was attractive to children and that plaintiffs' child and other children of the neighborhood had been playing about the pit from the time it was constructed down to the date of the accident; that a policeman passed down the street by the pit a few hours previous to the accident, which occurred about four o'clock p. m. on July 12, 1906. In playing about the premises the deceased child walked up the inclined board to the top of the pit, which turned with him, and he fell into the boiling mixture, and was scalded to death.

The defendants' evidence tended to show that the pit was constructed and maintained by Bridell in connection with the construction of certain buildings on abutting property; that there was no board leading from the street to the top of the pit; and that a policeman did not pass by the pit a few hours previous to the accident; that the pit and lime box used in this instance were the usual and customary means employed by plasterers, and that it was impracticable to erect guards around such pits, as any barrier which would keep out trespassers would also prevent the unloading of sand into the pit.

Such additional facts as may be necessary for a proper understanding of the legal propositions presented will be noticed during the course of the opinion.

The city of St. Louis makes the following assignments of error:

"1. The court erred in permitting witnesses to testify that children had been seen playing around and near the lime pit prior to the accident.

"2. The court erred in permitting witness for plaintiffs to testify that the lime pit was 'dangerous.'

"3. The court erred in submitting to the jury, in plaintiffs' instruction 1, as one of the issues in the case, the question whether or not children were accustomed to play near and around the lime pit.

"4. The court erred in refusing instruction 11 offered by the city.

"5. The court erred in permitting the foreman of the jury to alter the verdict and in accepting the same when so altered, without first polling the jury or at least securing their assent and without directing the jury to deliberate concerning such alteration.

"6. The court erred in permitting plaintiffs' counsel in course of his argument to use the photograph for purposes for which it was not in eviaence and to refer to and comment upon this point."

I.  The first error assigned by counsel for appellants challenges the correctness of the ruling of the trial court in permitting witnesses to testify that children had been seen playing for several days around and near the lime pit prior to the accident.

That action of the court is assailed for the reason stated, that the petition did not state that children were seen playing about the pit prior to the time of the accident.  There was no error in admitting this testimony.  It was admitted for the purpose of showing that the pit and the surroundings were as a matter of fact attractive to children, which was one of the charges made in the petition.

But independent of that, the courts will take judicial notice of the fact that such a structure maintained in the public streets of a city will attract children.  That is common knowledge; and matters which are generally and commonly known by all need not be proven.  This is elementary and needs no authority to support it.

These observations apply equally as well to the third assignment, and dispose of it also adversely to the contention of appellants.

II.  It is also insisted by counsel for appellants, that the court erred in permitting witnesses to testify to the fact that this pit was dangerous.

In the consideration of this insistence, it should be remembered that the pit was located in a public street in a great city and filled with a boiling mass of lime and water, uncovered and unguarded, around which it was known that children had been and would continue to play.  In fact the answer pleads that the deceased had been warned to stay away from the pit on account of its dangerous condition; and that his parents were guilty of contributory negligence for not having cautioned their child about those dangers.  Under this state of the record, it was necessarily admitted

that the pit was dangerous, and it was therefore unnecessary to prove that fact. But whether admitted or not, every one knows such a pit, filled with a seething mass of lime and water, was a dangerous thing to children, and would therefore require no proof of that fact. The jury knew that fact as well as the witnesses did who testified to it. So, under no view of the matter was the interest of appellants injured by the admission of that testimony.

III. Counsel for appellants asked, and the court refused, the following instruction, to which action of the court the appellants duly excepted, to-wit:

"You are further instructed that the city would not in any event be guilty of negligence in failing to cover, or cause to be covered, the lime pit, until after it knew, or by the exercise of ordinary care could have known, that the same had been on the evening in question left filled with lime so heated as to be productive of injury to persons coming in contact therewith and the same was uncovered.

"And the city would further be entitled in any event, after it knew or by the exercise of ordinary care could have known, of the condition of the lime pit, to a time reasonably sufficient to have enabled it to procure and place coverings upon the same, before you would be justified in finding a verdict against it on the ground that it failed to cover or cause to be covered the lime pit in question."

This instruction was properly refused, for the reason that the city granted to Bridell a permit to construct and use the lime pit for the purposes for which it was being used at the time this child fell into it and lost its life. It is common knowledge that these pits are constructed and maintained for the express purpose in which to slack lime, and that while going through the process of slacking the lime becomes intensely heated, sufficiently hot to set on fire any ordi-

Buttron v. Bridell.

nary combustible material that may come in contact with it, and when large quantities of water are added the whole mass becomes a boiling mass. The granting of the permit brought home to the city the knowledge for what the pit was to be used, as well as the knowledge of the natural and usual dangers incident to that use, namely, that it would be used for the purpose of slacking lime, which would produce a boiling mass; and that it would be dangerous to children playing around it, and to other pedestrians and travelers upon the street who should happen to come in contact with it. Under the circumstances the city was entitled to no notice.

This question was recently before this court in the case of Merritt v. Telephone Co., 215 Mo. 299, and the question was there so thoroughly and ably discussed by my associate, Judge GRAVES, that nothing new remains to be said upon the subject.

The instruction was properly refused.

IV. It is next insisted by counsel for appellants that the court erred in directing the verdict of the jury to be amended and in accepting it in its amended condition.

The following is a *fac simile* of the verdict as originally returned by the jury, to-wit (Formal parts omitted):

Thereupon the court said: "Gentlemen, your verdict is not in proper form; you will use one of the forms given you by the court."

Thereupon the papers were handed to the foreman, and he, in open court, the jury not retiring for further deliberation, erased the words "to be paid in equal amounts of $850 by defendants," and returned the following verdict:

"We, the jury in the above entitled cause, find the issues herein joined in favor of the plaintiffs and assess their damages at the sum of $1700."

The latter verdict was by the court accepted, and judgment entered thereon. To the action of the court in all of those matters, the appellants duly excepted.

It is apparent from an inspection of the verdict as originally returned by the jury that they used the blank form furnished by the court and to which they added the following words and figures "to be paid in equal amounts of $850 by defendants." The form of the verdict furnished to the jury by the court was in proper form, and if it had been signed by the jury it would have been legal and binding; but the addition of the words before quoted to the form furnished by the court was outside of and beyond the province of the jury. The law, and not the jury, determines who are to pay the damages to be assessed in damage suits; and when the jury undertook to impose one-half of the damages upon each of the defendants, it acted outside of and beyond its jurisdiction. If the jury had the authority to assess one-half of the damages against each defendant, then it had by virtue of the same authority the power to assess nine-tenths or any other proportional part thereof against one of them and the remaining part against the other. The jury possesses no such power, and when it attempted to so do by adding to the verdict the words erased, it was acting beyond its authority. Those words had no legal force or

effect whatever and were mere surplusage; and the court properly had them stricken out.

This question came before the Court of Appeals in the case of Hancock v. Buckley, 18 Mo. App. l. c. 465, and there Judge ELLISON, in speaking for the unanimous court, said: ''The verdict was as follows: 'We, the jury, find for the plaintiff $125.40, dividing entire costs equally between the parties' . . . The second point must likewise be ruled against the defendant. That part of the verdict dividing the costs between the parties was wholly outside of the issues submitted to them, and was properly treated as surplusage by the court.'' On rehearing: ''Defendant claims that the verdict of the jury, in the form in which it was returned, was the result of a mistake, and that the jury would not have returned a verdict for the plaintiff at all but for their belief that they had a right, under the law, to so apportion the costs; and, therefore, the judgment entered up by the court is not, in fact, the verdict of the jury. The inquiry naturally arises, how is the court to ascertain the existence of the fact thus alleged to have influenced the minds of the jurors? No rule of law is better settled than that the proper evidence of what the jury does decide is the verdict returned by them upon oath, and affirmed in open court. On the verdict returned into court in this case, the law, as shown in the opinion herein, required the court, without more, to treat so much of it as undertook to divide the costs between the litigants, as outside of the province of the jury, and, therefore, mere surplusage, to be rejected by the court in entering up judgment.'' Abbott's Civil Trial Brief, 537, says: ''Before a verdict, whether oral or sealed, is recorded, and the jury have been dismissed from their relation as such to the case, the court has power to require them to reconsider their verdict, not merely to correct a mistake in form or make that plain which

was obscure, but to supply what is wanting, or to alter it in substance, if they so agree."

In Champ Spring Co. v. Roth Tool Co., 103 Mo. App. l. c. 109, the court said: "Until the rendition and record of the verdict, the jury remain in control of it with power to alter or withdraw it. [Proffatt, Jury Trial, sec. 456.] The power, however, has long been exercised to correct obvious errors in substance as well as in form. The rule has been amplified to the extent of authorizing the court, before the recording of the verdict and before the discharge of the jury, and while their relation to the case as jurors continues, to require a reconsideration of the verdict, not merely to correct error or remove obscurity in the verdict but to alter it substantially if the jury so agree."

And this court has said upon this subject: "The court may direct the jury to amend, when the verdict is imperfect and informal, and may send them back to the jury room for that purpose. In every case of a verdict rendered the judge should look after its form and substance so as to prevent a doubtful or insufficient finding from passing into the records of the court." [Cattell v. Publishing Co., 88 Mo. l. c. 359; Gurley v. O'Dwyer, 61 Mo. App. 348.]

"It sufficiently appears on the face of the proceedings in court upon the return of the jury with their verdicts herein fully set out, that their return was such as ought to have been amended, that it was in fact properly amended, and that the amendment was made in open court in the presence and with the assent of the jury before entry and before the court did in fact adjourn, and we find no error in this proceeding." Citing cases. [Kreibohm v. Yancey, 154 Mo. l. c. 82, 83.]

"It is common to reject as surplusage any statement in a verdict that does not affect the real finding, and enter judgment upon such finding, and to do so has

never been held to be error." [Ranney v. Bader, 48 Mo. l. c. 541.]

"It is the duty of the court, when informal verdicts are returned by the jury, either to have them retire to the jury room and correct the informality, or else to correct the verdict in open court in the presence and with the consent of the jury." [Hartman v. Railroad, 48 Mo. App. l. c. 625; Gaither v. Wilmer, 5 L. R. A. (Md.) 756, note.]

V. In the assignment of errors counsel for appellants complain of the action of the trial court in permitting respondents' counsel in course of argument to use a photograph introduced in evidence for a purpose for which it was not introduced, and to refer to and comment upon that purpose.

No reference is made to this alleged error by counsel for appellants in their briefs, and we suppose therefrom that the matter has been abandoned and is not urged upon us for consideration.

However, we investigated the abstract of the record bearing upon that matter, and are of the opinion that there is no merit in this assignment.

Finding no error in the record, the judgment should be affirmed; and it is so ordered. All concur.