STATE OF MISSOURI at the Relation of ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Relator, v. WILLIAM DEE BECKER, JOSEPH KANE and EDWARD McCULLEM, Judges of the St. Louis Court of Appeals.—66 S. W. (2d) 141.

Division One, December 6, 1933.

*T. E. Francis* and *B. G. Carpenter* for relator.

*Everett Hullverson* and *Staunton E. Boudreau* for respondents.

FERGUSON, C.—This is an original proceeding in certiorari. The relator, St. Louis Public Service Company, seeks to have the opinion of the St. Louis Court of Appeals in the case of Berryman v. People's Motorbus Company of St. Louis and St. Louis Public Service Company (Mo. App.), 54 S. W. (2d) 747, quashed, alleging same to be in conflict with certain prior, controlling decisions of this court. The plaintiff in that case, James Berryman, claimed to have sustained bodily injuries when struck by a motorbus, owned and operated upon the streets of the city of St. Louis by the motorbus company, which "knocked him down" upon or near to the street car track of the Public Service Company whereupon he was then and there struck by one of the Public Service Company's street cars. He brought a joint action in the Circuit Court of the City of St. Louis against the motorbus company and the Public Service Company, alleging that the injuries thus sustained were caused by concurrent, negligent acts of the defendants. Plaintiff had judgment in the trial

court, for damages, in the sum of $3500, from which judgment both defendants appealed. The appeal went to the St. Louis Court of Appeals and that court, by the opinion which is the subject of this proceeding, affirmed the judgment of the circuit court. The Public Service Company then applied for and was granted the writ issued herein.

We quote from respondents' opinion such of the facts as appear to be pertinent to a consideration of the matters here urged by relator.

"On the 10th of December, 1928, between six-thirty and seven p. m., plaintiff boarded a southbound Broadway street car of the defendant, St. Louis Public Service Company, intending to ride to Broadway and Victor Street, 2500 south, in the neighborhood of where he lived. Instead, however, plaintiff fell asleep and when he awoke the car was approaching 5200 South Broadway, at which corner he got off the car with the intention of crossing to the east side of Broadway to take a northbound car back to his original destination.

"According to plaintiff, upon alighting from the street car he stood within three feet of the west rail of the southbound track awaiting an opportunity to cross to the east side of Broadway. While thus standing and awaiting the passing of some automobiles that were going north, plaintiff saw approaching him from the north an automobile, and behind it a motorbus being driven south on Broadway. The automobile passed in the car tracks to the east of plaintiff, but, according to plaintiff, the motorbus, which was following the automobile perhaps a quarter of a block, came on without a warning signal of any kind and approached without decreasing its speed, and as the front of the bus got to plaintiff it made a turn to the west and the left side of the bus struck plaintiff and knocked him down. Plaintiff said it was the left side of his body that was struck by the bus and that he was knocked unconscious. Plaintiff described his position in the street as being at the regular crossing place, 'right under the big light.'

"According to the driver of the motorbus it was close to seven o'clock and the electric street lamps were lighted. He testified that he was turning in for the day; . . . that, when he first saw plaintiff, plaintiff was three feet east of the west curb at a time when the front of the bus was eight feet to the north of the plaintiff and six feet to the east of him; that plaintiff was evidently trying to get to the east side of Broadway 'in a dog-trot-sort of staggering out;' that he sounded his horn and swerved the bus to the left and brought the bus to a stop, straddling the center of the north and southbound tracks; . . . that he got out of the bus and looked and saw plaintiff between the rails of the southbound street car tracks 'in a getting-up position on one knee;' that, while plaintiff was in this position, the witness saw a southbound street car approaching, traveling thirty or thirty-five miles an hour, and then

distant fifty feet from plaintiff; that he did not hear any warning sounded by the street car, and that no attempt was made by the motorman to stop the speed of the car until the car was within fifteen feet of plaintiff when the brakes were put on, the wheels locked and the car 'kept on coming in a sliding position—the wheels locked. This man was kneeling and it bumped him and knocked him down and bumped the man again and got him underneath the guard under the car.' He stated the first time the car knocked plaintiff five or six feet, and the second time 'the distance underneath the car was about two or three feet.' According to this witness, after the car struck plaintiff it traveled eight or nine feet. When the car stopped 'a part of plaintiff's body was underneath and a part in front of the car.' At this point in the examination of the witness he was asked: 'How far could you see an object away? A. If looking for a man I could see him three or four blocks away.' . . . 'Q. Under the conditions existing that night? A. Yes, sir.' 'Q. It was that light and that clear? A. Yes, sir.' . . . 'Q. How far did the car knock him, hitting him the first time? A. I judge about eight feet, about the length of his body.' . . . 'Q. What did the man do while the car was coming that fifty feet? A. He was getting up.' 'Q. He was on one knee, you said. Now, did he get fully up on his feet while the car was going fifty feet? A. No, sir.' "

Later in the course of the opinion and in connection with a discussion of the action of the trial court in overruling the demurrer to the evidence offered by the defendant Public Service Company and upon which it elected to stand, it is said that "plaintiff testified that the motorbus struck him and knocked him unconscious;" that "he knew nothing at all of having been hit by the street car," "was unaware of the fact that he had been struck by the street car" and "that if anyone spoke to him at the place of the accident he had no knowledge or recollection of it; that he had been knocked unconscious."

Respondents' opinion says: "Plaintiff's case was submitted to the jury solely upon an instruction predicating a recovery upon the humanitarian doctrine." Plaintiff's instruction numbered 2, permitting a recovery as against relator, Public Service Company under the humanitarian rule included failure of the motorman to sound a warning and failure to slacken the speed of the street car. Relator's first contention is that in holding the instruction proper under the facts the opinion of the Court of Appeals is in conflict with the following decisions of this court: Peterson v. United Rys. Co., 270 Mo. 67, 192 S. W. 938; Murray v. Transit Co., 176 Mo. 183, 75 S. W. 611; Driscoll v. Wells (Mo.), 29 S. W. (2d) 50; Wood v. Wells (Mo.), 270 S. W. 332; Hutchinson v. Railroad, 195 Mo. 546, 93 S. W. 931; Mockowik v. Railroad, 196 Mo. 550, 94 S. W. 256. In the Peterson case the plaintiff knew of the approach of the street car

when it was yet 600 feet away and it was held that, since he had actual and timely notice of the approach of the car, failure to sound the gong could not have been the proximate cause of his injury and it was error to give an instruction basing plaintiff's right to recover upon failure to sound such warning. In the Murray case it is said that if the injured person in fact saw the street car coming "the neglect . . . of the motorman to sound the gong, if he did neglect to sound it, cannot have any influence in the case." It was admitted that the plaintiff in 'the Wood case saw the approaching street car when it was seventy-five feet from the street crossing where the collision occurred and it was held that the failure of those in charge of the street car to sound a warning was not a proximate cause of plaintiff's injury. The Hutchinson and Mockowik cases are similar upon the facts and the ruling of this court to the same effect as the foregoing cases. In Driscoll v. Wells, plaintiff, a pedestrian upon the street, was struck by an automobile "and knocked . . . down beside" the street car track "while the street car was an automobile length away. After being knocked down he was struck" by the street car. This court said: "We think respondent .failed to make a case for the jury against appellant receiver under the humanitarian rule. The only allegation of negligence under the humanitarian rule, which respondent sought to support by any evidence, was the allegation that the motorman negligently failed to stop the street car before striking respondent. A warning to respondent of its approach could have served no purpose, for respondent knew the street car was approaching and was seemingly well aware of his peril. Nor is there any evidence tending to show that slacking the speed of the street car, short of a stop, would have enabled respondent to avoid being struck by it." Relator argues that "the evidence is undisputed that plaintiff was totally unconscious as he lay on the street car track" immediately before and at the time he was struck by the street car and that it therefore "conclusively" appears that neither "warning" nor "slackening the speed of the street car" would or could have served any purpose and that the failure to sound a warning and slacken the speed of the car could not have been the proximate cause of any injury sustained by plaintiff. We have set out all the evidentiary facts stated in the opinion of the Court of Appeals touching plaintiff Berryman's condition, actions and conduct and that part of respondents' opinion ruling the instruction and which relator alleges to be in conflict with the decisions of this court, supra, cited by relator and to which we have made reference, is as follows:

"The next complaint by defendant, Public Service Company is to the giving of instruction numbered two at the request of plaintiff. It is urged that this instruction erroneously permitted a recovery against it upon a finding by the jury that the defendant's motorman

failed to give plaintiff warning of the approach of the street car, when, under the facts and circumstances in the case, such failure could not have been the proximate cause of plaintiff's injury since plaintiff testified that he was lying upon the tracks in an unconscious condition, and therefore the sounding of the street car gong could not have avoided the accident.

"This argument, however, fails to take into consideration the fact that Hatton, adduced as a witness for plaintiff, testified that, when he saw the defendant's street car fifty feet from plaintiff 'he wasn't lying down. He was in a getting-up position on one knee.' 'Q. How far was the street car away when you noticed him getting up in the track? A. Fifty feet.' And on cross-examination, this witness, when asked what plaintiff was doing while the car was going the fifty feet, he answered: 'He was getting up.' 'Q. He was on one knee you said. Now, did he get fully up on his feet while the car was going the fifty feet? A. No, sir.' 'Q. What position was he in when the car hit him? A. One knee toward the ground and the other leg straightened out.'

"In light of this testimony reasonable minds might differ as to whether or not, had a gong been sounded, the plaintiff might not thereby have become aware of the near approach of the street car and managed to get off the car tracks in time to have avoided being struck by the street car.

"This is sufficient answer also to the contention that the said instruction numbered two was erroneous in that it permitted a recovery against the street car company upon a finding by the jury that the defendant's motorman failed to slacken the speed of the street car, since the testimony showed that the plaintiff was in the act of rising to his feet at the time the car was fifty feet from him, and continued in that endeavor up to the moment he was struck by the street car."

Adverting to the decisions of this court, supra, cited by relator and with which relator asserts the foregoing portion of respondents' opinion conflicts it will be noted that the facts in the case ruled by respondents differ from the facts upon which our rulings were based in that in each of our cases it is pointed out that either it was conceded or under all the evidence indisputably shown that plaintiff timely saw and was aware of the approaching street car or train, as the case may be, and therefore the failure to sound a warning could not, under such facts, be held to be the proximate cause of the injury sustained while in the Berryman case relator advances the theory that the facts conclusively show that plaintiff was lying upon the street car track totally unconscious and therefore unaware of the approach of the street car and since he was totally unconscious and helpless the sounding of the gong or slackening of the speed would not have served any purpose and could not have contributed

to plaintiff's escape from the peril in which he had been placed by the other defendant's negligent acts. But taking the purport and effect of our cases, upon which relator relies, to be that it is error for the trial court to submit to the jury the issue of failure to give warning signals and slacken speed when under all the evidence in the case it conclusively appears that had such been done it could not possibly have enabled plaintiff to avoid the collision nevertheless we do not find that in the opinion under review respondents have promulgated any rule of law contrary thereto. Relator's contention is then resolved to this that respondents' conclusion on the facts runs counter to the principle of law which our cases cited announce but we cannot hold with relator that from the evidence set out in respondents' opinion it conclusively appears that plaintiff was lying upon the street car track in a condition of total and complete unconsciousness and could not therefore possibly have heard or heeded a warning had same been given nor do we find respondents' conclusion that there is substantial evidence to warrant the submission of the issues of failure to warn and failure to slacken speed to be contrary to or in conflict with the ruling of this court upon the same or a similar state of facts.

■ The next portion of respondents' opinion which relator challenges is as follows:

"The record discloses that the jury returned the following verdict:

" 'We, the jury in the above cause, find in favor of the plaintiff, and against both defendants on the issues herein joined and assess plaintiff's damages at the sum of three thousand five hundred dollars.

" '$2,500 against The People's Motorbus Co.

" '$1,000 against The Public Service Co. of St. Louis.'

"The record further shows that this verdict was received by the court and duly entered of record on the same day that it was rendered. Each of the defendants filed a motion in arrest of judgment on the ground that the verdict improperly and unlawfully apportioned damages between joint tort-feasors. On plaintiff's motion, at the same term, the court ordered the following words and figures '$2,500 against The People's Motorbus Co., $1,000 against The Public Service Co. of St. Louis' stricken from the verdict theretofore returned by the jury. Each of the defendants thereupon filed motions to set aside this order, which were overruled, as were the motions in arrest of judgment.

"The right of a court to amend a verdict after the discharge of the jury is limited to matters of form or clerical errors clearly made manifest by the record, but never to matters of substance required to be passed on by the jury, which, in their nature, are essential to the determination of the case and subject to dispute. It is, therefore, informalties and not material matters that the court may amend. [Meffert v. Lawson, 315 Mo. 1091, 287 S. W. 610.]

"However, it has been held proper for the trial court to reject as surplusage any statement in a verdict that does not affect the real finding and to enter judgment upon such real finding. This was done in the early case of Hancock v. Buckley, 18 Mo. App. 459, l. c. 465. The court had before it a verdict which found upon the issues, and then added that the costs were to be divided between the parties, and it was held that that part of the verdict of the jury, which divided the costs between the parties, was wholly outside of the issues submitted to them, and was properly treated as surplusage by the court.

"In the case of Ranney v. Bader, 48 Mo. 539, the jury returned a verdict for plaintiff and assessed 'his damages at $293, with six per cent interest.' Upon this verdict the court rendered a judgment for $293, saying nothing about the interest, treating that part of the verdict as surplusage. On appeal our Supreme Court held that the correctness of this action of the court was manifest since the law fixes the interest in accordance with the verdict; and the finding in that regard did neither good nor harm, and affirmed the judgment. And in State ex rel. Webster v. Knight, 46 Mo. 83, the verdict of the jury found for defendants 'they to pay the costs of this suit.' The trial court refused to receive this verdict and discharged the jury, whereupon the defendant sought a writ of mandamus. In the course of the opinion, directing a peremptory writ, our Supreme Court said: 'The jury found for the defendant; the verdict was good and complete. The matter of costs was not in issue, and was not submitted to them. That part of their verdict, therefore, was merely void, and should have been disregarded as surplusage.'

"In the later case of Buttron v. Bridell, 228 Mo. 622, 129 S. W. 12, the jury returned a verdict finding the issues 'in favor of plaintiffs and assessed their damages at the sum of $1,700, to be paid in equal installments of $850 by defendants.' Thereupon the court told the jury the verdict was not in proper form, and directed them to use one of the forms given them by the court. The jury again retired and brought in a verdict with the words 'to be paid in equal installments of $850 by defendants,' erased therefrom. This latter verdict was accepted by the court, and judgment entered thereon, and on appeal our Supreme Court said: 'The law and not the jury determine who are to pay the damages to be assessed in damage suits; and when the jury undertakes to impose one-half of the damages on each of the defendants it goes outside of and beyond its jurisdiction. If the jury had the authority to assess one-half of the damages against each defendant, then it had by virtue of same authority, the power to assess nine-tenths or any other proportionate part thereof against one of them and the remaining part against the other. The jury possesses no such power and when it attempted to do so by adding to the verdict the words erased, it was acting beyond its authority.

These words had no legal force or effect whatever and were merely surplusage; and the court properly had them stricken out.'

"In the light of the authorities we therefore rule in the instant case that since by their verdict the jury found 'in favor of the plaintiff, and against both defendants on the issues herein joined, and assess plaintiff's damages at the sum of $3,500,' the added words, '$2,500 against The People's Motorbus Company, $1,000 against The Public Service Company of St. Louis,' were of no legal consequence, being wholly outside of the issues submitted to the jury, and were properly treated as surplusage by the court rendering judgment upon the verdict."

Relator claims this ruling of the Court of Appeals runs counter to and conflicts with the pronouncement of this court in three cases; Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S. W. (2d) 543, Meffert v. Lawson, 315 Mo. 1091, 287 S. W. 610; and Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673. The writer is unable to discover in what manner the last case cited, Johnson v. Grayson, tends to support this contention of relator. The only statement therein touching the verdict or the province of the jury is the statement: "The rule of law in this State is that the jury must calculate the interest on a note sued on, and even where a peremptory instruction to find for plaintiff is proper the court cannot assume to calculate the interest, but must submit the matter to the jury." We do not perceive, nor does relator point out, the applicability of that case. Neal v. Curtis & Co. Mfg. Co., does not deal with a similiar record or situation but relator directs our attention to an observation made therein that, "there can be no such thing as a jury returning into court in a personal injury action against several defendants based on joint or concurring negligence, a verdict for one amount of damages against one wrongdoer and another amount against another." Later in the same case the following rule quoted from a California case (Marriott v. Williams, 52 Cal. 705, 93 Pac. 875), is approved:

"In actions against two or more persons for a single tort, there cannot be two verdicts for different sums against different defendants upon the same trial. There can be but one verdict for a single sum against all who are found guilty of the tort. All who are guilty at all are liable for the whole amount of the actual damages arising from the injury inflicted, irrespective of the degree of capability." In a case such as this with which the opinion of the Court of Appeals deals the jury has no right, power or authority to apportion the damages found and assessed; that is not a matter for its determination or with which it is concerned nor is the manner of payment an issue in the case. The law and not the jury determines who are to pay the damages assessed in such a case. [Buttron v. Bridell, 228 Mo. 622, 129 S. W. 12.] We think this holding of the Court of Appeals cannot be said to be in conflict with the comment quoted

from Neal v. Curtis & Co. Mfg. Co., but rather in harmony therewith. The jury was authorized and empowered to determine the issue of defendants' liability and having determined that as against both defendants then to find and assess in one sum the damages sustained by plaintiff and such was the limit and extent of its power and duty. When the jury went beyond that, as the Court of Appeals held, and added to the finding which it was authorized to make other matter which it had no power or authority whatsoever to pass upon or deal with such matter did not affect the real finding upon the issues it was empowered to determine, was without any legal force or effect and in entering judgment should be treated, as was done in this case, by the trial court, as mere surplusage, stricken out and disregarded. It will be noted that the jury made a finding upon all the issues it was authorized to determine and returned a complete verdict thereon as follows:

"We, the jury in the above cause, find in favor of the plaintiff, and against both defendants on the issues herein joined and assess plaintiff's damages at the sum of three thousand five hundred dollars."

To this was then appended a proposed apportionment of the damages. The appendix was mere surplusage and was properly so treated. In so holding the Court of Appeals appears to have followed the principles declared in prior decisions of this court rather than to have contravened such decisions as relator alleges. The remaining decision of this court cited by relator Meffert v. Lawson, supra, is cited in the opinion of the Court of Appeals and the rule relator says that case prescribes is stated in the opinion. The opinion recognizes the rule and in applying it to the situation shown it does not appear that respondents have gone counter to either the Meffert case or any of our decisions cited by relator.

Another portion of respondents' opinion which relator challenges is:

"Both appellants assign error in the instruction on measure of damages, which authorized the jury in assessing damages, that they might take into consideration such earnings, if any, plaintiff has lost or is reasonably certain to lose in the future by reason of his injuries, if any, and directly caused thereby. It is argued that possible loss of future earnings was improperly included as an element of damages in that there was no evidence that the plaintiff was reasonably certain to lose earnings in the future.

"Plaintiff himself testified at the trial that the right foot 'pains me all the time,' and that his head bothers him 'pretty often; that two or three times a week he has headaches;' and that 'my foot pains me all the time. . . . At times it pains worse;' that since the accident he has to wear arch supports; that if he walks all day the foot swells up, becomes sore and pains; that when he gets

home of an evening it is necessary for him to bathe his foot in hot salt water.

"The jury might reasonably find that plaintiff's ability to work and therefore to earn wages, would be impaired in the future, and we rule it was not error to include this element of loss of future earnings in the instruction."

Relator says this ruling is contrary to the holding of this court on a like question in Lebrecht v. United Rys. (Mo.), 237 S. W. 112; Rosenzweig v. Wells, 308 Mo. 617, 273 S. W. 1071; Hall v. Coal & Coke Co., 260 Mo. 351, 168 S. W. 927; Gaty v. United Rys., 286 Mo. 503, 227 S. W. 1041. Neither the Hall nor Gaty case seems to directly touch upon the matter which respondents have thus ruled. The holding in that part of our opinion in the Hall case relating to damages which may be recovered is that, "special damages which are the natural but not necessary result of the injury complained of must be specifically alleged" in the petition, while in the Gaty case it seems the verdict was held to be excessive in view of the fact that the evidence did not show the injuries to be permanent. The writer does not perceive the relevancy of these cases. In both Rosenzweig v. Wells, and Lebrecht v. United Rys. Co., the giving of an instruction authorizing the jury to allow damages for permanent injuries was held error there being no substantial evidence of the permanency of the injuries. The instruction involved does not, so far as appears by the opinion, authorize allowance of damages for permanent injuries but the element of damage included therein against which the appellants' complaint was made is that of loss of future earnings. As to a somewhat similar situation and like complaint this court, en banc, said:

"Appellant also assigns error to instruction on the measure of damages which authorized the jury in assessing damages to take into consideration the loss of wages which they would find from the evidence that the plaintiff had sustained, and 'is reasonably certain to sustain in the future as direct result' (of the injury).

"Appellant argues this as if it authorized recovery for permanent injury. It does nothing of the kind, but allows for loss of future earnings. At the time of the trial she still had trouble on account of the injury, which troubles were detailed at some length. . . . The jury might reasonably find that her ability to work and therefore to earn wages would be impaired in the future." [Kemper v. Gluck, 327 Mo, 733, 39 S. W. (2d) 330.]

It does not appear that respondents' conclusion that the evidence was sufficient to warrant the submission of the question of impairment of future earnings is in conflict with any ruling of this court in any of the cases cited by relator upon a same or essentially similiar state of facts nor has such decision by this court come to our attention.

Lastly relator advises us in its brief that on appeal it as-

signed, and urged before respondents, as error on the part of the trial court the giving of plaintiff's Instruction 5, on the ground that said instruction contained prejudicial comment on certain phases of the evidence and claims such instruction has been condemned by this court. However the instruction complained of is not referred to in respondents' opinion and for that reason cannot be considered here. [State ex rel. John Hancock Mutual Life Insurance Company v. Allen, 313 Mo. 384, 282 S. W. 46.]

Our sole province in this proceeding is to determine whether the opinion of the Court of Appeals is in conflict with some previous controlling decision of this court (State ex rel. Weisheyer v. Haid (Mo.), 26 S. W. (2d) 939) and with that purpose we have examined the decisions of this court which relator cites and claims respondents' opinion contravenes but find no such conflict nor do we know of any other decisions of this court in conflict therewith.

It follows therefore that our writ issued herein should be quashed. It is so ordered. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.