Iron Mountain Bank of St Louis v. Murdock and Armstrong.

IRON MOUNTAIN BANK OF ST. LOUIS, Mo., Appellant, *vs.* JOHN J. MURDOCK AND DAVID H. ARMSTRONG, Respondents.

1. *Practice, civil—Instructions changing issues improper.*—Courts do not possess the power to change by instructions the issues which the pleadings present.

2. *Instructions singling out certain facts improper.*—An instruction is erroneous which singles out certain facts and directs a verdict, if they are found, regardless of other facts at issue.

3. *Evidence—"Falsus in uno," etc.—Testimony should not be disregarded, unless, etc.*—An instruction that the jury may disregard the testimony of a witness who has sworn falsely, concerning any material fact in issue, should not be given. They cannot reject his evidence unless they believe that he has knowingly testified to an untruth.

4. *Promissory note—Suit on—Interest clause, insertion of—Proof as to other notes, etc.*—It is not competent, in order to show that a party to a note in suit, has authorized the insertion of a clause respecting interest, to show that he was a party to other notes containing similar clauses.

5. *Evidence—Impertinent matter—Testimony as to—Impeachment of witness.*—A witness cannot be questioned in regard to impertinent matter in order to contradict him.

6. *Promissory note—Alteration—Insertion of rate of interest—Question of alteration to be tried by the jury, when.*—In suit against the indorser on a promissory note, the defense being an unauthorized alteration, it appeared that in the bottom line, at the end of the note, was the printed form "for value received" without a printed blank following it, in which to insert rate of interest (*Sic* "with interest from —— at the rate of —— per 'cent. per annum"); but that in the blank space, commencing on the line with and directly following the words "value received," and running obliquely upward to avoid the signature, were written, after the paper left defendant's hands, the words "with interest at the rate of ten per cent. per annum after maturity." Nothing in the color of the ink used in the inserted clause, would readily excite suspicion. It was held that, although the note did not present a glaring case of alteration, yet enough appeared to authorize the court under appropriate instructions to leave to the jury the question whether the note was altered in such a manner as to put the plaintiff on inquiry at the time of his purchase. See Capital Bank v. Armstrong, *ante* p. 59.

7. *Promissory note—Alteration—Insertion of rates of interest—Liability of prior party—Case stated.*—In a case where a note, framed on a printed blank, was complete at the time it left the hands of the party sought to be charged, but was so printed as to give an apparent authority to fill a blank space occupying the same position relative to the body of the note that an interest clause usually does, and the space left furnished ample room for inserting such clause, and the space was not filled in a way to attract observation, the court strongly inclined to the opinion that the defendant would be bound to an innocent holder.

*Appeal from St. Louis Circuit Court.*

*Slayback & Haeussler,* for Appellant. cited Putnam vs. Sullivan, 4 Mass., 45 ; Zimmerman vs. Rote, 75 Penn. St., 188 ; Nebecker vs. Cochrane, 48 Ind., 436 ; Ritter vs. Singmaster, 73 Pa., 400 ; 7 Mo., 231 ; Redlich vs. Doll, 54 N. Y., 234 ; Rainbolt vs. Eddy, 34 Iowa, 440 ; Garrad vs. Hadden, 67 Penn. St., 82 ; 43 Vt., 375 ; 53 Mo., 516 ; 54 Mo., 77 ; Whittemore vs. Obear, 58 Mo., 286–287 ; Gardiner vs. Harback. 21 Ill., 130–31 ; Workman vs. Campbell, 57 Mo., 53–55 ; Speake vs. United States, 9 Cranch., 29 ; Smith vs. Crooker, 5 Mass., 540 ; Ball vs. Dunsterville, 4 T. R. 313 ; Barrington vs. Bank of Washington, 14 Serg. & R., 405 ; Stahl vs. Berger et al., 10 Serg. & R., 170–73 ; Shirts vs. Overjohn, 60 Mo., 305 ; Woolfolk vs. Bank of America, 10 [Ky.] W. P. D. Bush, 504 ; Phelan vs. Moss, 67 Pa., [17 P. F. Smith], 59 ; Stedman et al., vs. Boone, 49 Ind. [15 Am. Law Reg. 91] ; Bank of Salina vs. Babcock, 21 Wend., 499 ; Sandusky vs. Scoville, 24 Wend. 115.

*Dryden & Dryden, with A. Reese,* for Respondents.

Sherwood, Judge, delivered the opinion of the court.

Suit on a negotiable promissory note which the defendant, Armstrong, is charged with having indorsed. The petition contains the usual allegations as to presentment, dishonor and notice.

Though admitting the genuineness of his indorsement the defendant claimed in his answer, which was duly verified that the words "with interest at 10 per cent. after maturity" were, subsequently to his indorsement, and when the instrument was completed, inserted without his knowledge, consent or authority. The answer also contained the statutory general denial, as to dishonor, notice, etc. The reply was similar in its essential features to the one in the Capital bank against the same defendant, decided at the present term, the only difference being that the reply here was more emphatic in its denial of the alteration, alleging " that said new matter was untrue, and a mere pretext on the part of the defendant," etc.

Iron Mountain Bank of St. Louis v. Murdock and Armstrong.

The note sued on was in this form :

The evidence was to a certain extent conflicting. The plaintiff had a verdict and judgment. On appeal to general term there was a reversal, on account of which the plaintiff has appealed.

1. In conformity with our previous ruling in the case above referred to, inasmuch as there was no issue made by the pleadings as to subsequent ratification by Armstrong, of the alleged alteration, the third instruction given at plaintiff's instance, must be held erroneous. It manifestly diverted the attention of the jury from that which was to that which was not in issue, thus defeating the very object which the law has in contemplation when requiring pleadings to be filed and a court does not possess the power to change by instructions the issues which the pleadings present. (Moffat vs. Conklin, 35 Mo., 453 ; Camp vs. Heelan, 43 Mo., 591.)

Our statute (Wagn. Stat., 1040, § 11) defines a trial as "the judicial examination of the issues between the parties." Now, it is obvious, that a trial must fail in accomplishing its statutory purpose, when diverted to the examination of matters *dehors* the record and foreign to the issues.

2. The second instruction on behalf of the plaintiff was to the effect that if the interest clause was inserted, either before or after Armstrong's indorsement, and with his consent, this would warrant a finding in favor of the plaintiff. The serious objection to this instruction is, that while it may be correct as far as it goes, it is altogether too narrow in its scope. The other allegations of the petition, put in issue by the answer, as to whether the bank was the holder of the note, as to the presentation of the note for payment, as to its dishonor, as to notice to defendant, etc., etc., are entirely ignored and lost sight of. And yet all these were controverted facts ; all necessary to be proven in order to a recovery. And this lack in the instruction was not supplied by any others. The instruction therefore was clearly violative of the principle so often asserted by this court, that an instruction is erroneous which singles out certain facts and directs a verdict, if they are found regardless of other facts at issue. (Hines vs. Mc-

Kinney, 3 Mo., 382; Sigerson vs. Pomroy, 13 Mo., 620; Clark vs. Hammerle, 27 Mo., 55; Mead vs. Brotherton, 30 Mo., 201.) Instructions are equally faulty whether enlarging or restricting the issues.

3. The first instruction asked and given for the plaintiff, that "if the jury believe from the evidence that any witness has sworn falsely in regard to any material fact in issue, they are at liberty to disregard his entire evidence," should have been given, if given at all, in a different shape from that in which it was asked. It is not true as a legal proposition, that because a witness· has honestly testified to that which is in point of fact untrue, therefore, the jury may reject the whole of his testimony. It is only where a witness has knowingly testified to an untruth, that an instruction of this character should be given. (Paulette vs. Brown, 40 Mo., 52, and cases cited.) The instruction, however, in the case before us even if properly worded, would appear to have had little, if anything, whereon to base it. It is certain that such an instruction should not be given in the ordinary routine of jury trials; and merely because there happens to be a conflict of testimony, such conflict by no means implies dishonesty of motive. The best citizens of the country, when called to the witness stand, frequently differ in their versions of the same facts; but yet this alone should furnish no basis for impugning their purity of purpose, or denouncing them as wholly unworthy of belief.

4. The fourth instruction, asked by defendant, should have been given. The simple fact that the defendant was the indorser of four other promissory notes, containing interest clauses, did not tend in the slightest degree to show that he had authorized the insertion of a clause respecting interest in the note in suit. These notes should not have been admitted, or if improvidently admitted should have been excluded, as asked by the instruction referred to. For it is a rudimentary principle that "the evidence must correspond with the allegations and be confined to the point in issue." (1 Greenl. Ev., §§ 50, 51, 52, p. 448.) Were the rule otherwise, litigation would be interminable, by reason of the introduc-

tion of collateral issues. This evidence was received very doubtingly by the trial court; but we think it should have been, for the reasons given, altogether rejected; and it certainly could not be received for the purpose of discrediting Armstrong, who had been interrogated on the subject. A witness cannot be questioned as to an impertinent matter in order to contradict him. (Harper vs. I. & St. L. Railroad Co. 47 Mo., 567; 1 Greenl. Ev., § 449.)

5. In reference to the note in suit, the evidence tended to show that at the time of its transfer to plaintiff, it was in the same condition as now, and there was nothing impeaching the *bona fides* of such transfer. It was shown, however, on the part of the defendant, that after his indorsement was made and the note redelivered to Murdock, the maker, the interest clause was inserted in the absence and without the authority of Armstrong, by the book-keeper of Murdock, at the instance of the latter. The clause respecting interest is in the same handwriting as the body of the note, all having been written by the book-keeper, who testified that after the note had been signed by Murdock & Dickson and indorsed by Armstrong, witness wrote the words mentioned in an oblique direction in order to avoid writing over the "D" in the name of Dickson. The original note is before us, and although there was some variance of opinion as to whether the words in question were written with different ink, we have been able to discover, in regard to any difference in the color of the ink employed, nothing which would readily excite observation. This note does not present a glaring case of alteration like that in the case of the Capital bank, *supra;* for there the alteration was in ink of a different color; was in short an interlineation patent to even casual observation. If the note, although complete at the time it left Armstrong's hands, had been so loosely filled, in respect of the principal sum mentioned therein, as to easily admit of enlarging the liability already imposed by the instrument, and in a manner calculated to baffle prudence in its ordinary manifestations, no hesitancy would be felt in asserting, in accordance with our more recent adjudications, the undoubted liability of the indorser to an innocent purchaser.

And the same line of remark, we regard applicable in the present instance. If the instrument was really complete, but was so carelessly printed as to give an apparent authority to fill a blank space, occupying the same relative position to the body of the note that an interest clause usually does, we strongly incline to the opinion that if this space furnished ample room, and was not filled in a way to attract observation, the indorser would be bound to an innocent holder. And in either of the cases instanced, the matter is for the jury under appropriate instructions. The blank being considered is unquestionably not an ordinary interest blank, which is usually printed thus, "with interest from——at—— per cent. per annum." If there was such a blank here, it would carry on its face, so far as concerns an innocent purchaser, conclusive authority for filling the spaces thus left, regardless of the question whether such spaces were filled with the adroitness incident to practiced penmanship or otherwise, and hence no difficulty would be experienced in the proper disposition to be made of the point. If the space left had in lieu of the words it now contains, been filled with these, "and one hundred dollars additional after maturity," no one would doubt that the purchase of such an instrument could not be sanctioned without at once breaking down all existing barriers between negligence on the one hand and prudence on the other. But there would seem to exist a certain degree of appositeness in the insertion of words in the usual place allotted to them, of the same import as those constituting the alleged alteration, when no degree of appositeness could be affirmed of words of the tenor and effect used above, by way of illustrating an extreme case. And the reason for distinguishing the real from the hypothetical case must be obvious. In the latter, the insertion, in an unusual place, of unaccustomed words, should give the alarm to prudence, and put caution on the alert. But in the former case it would scarcely seem probable that apprehension should be awakened by inserting words which accompany as a usual incident those which compose the body of the note, if such words are

State, ex rel. v. Ferguson.

apparently inserted contemporaneously with the residue of the written words of the note, and not in a manner provocative of inquiry.

These considerations induce the belief before expressed, that the matter of the alteration of the note, and the question whether, if altered, it was done in such manner as to challenge investigation when purchased by the bank, can be appropriately committed to the triers of the facts, with proper instructions. The same may be said respecting the question of ratification, in relation to which we refer to our recent decisions of Evans vs. Foreman (60 Mo.. 449.) and German Bank vs. Dunn, *post*, p. 79, and also to the following authorities, enunciating the same doctrine. 2 Greenl. Ev., § 66 ; Sto. Agency, 8 ed., §§239, 445 and notes ; Pal. Agency (by Dunlap) 171, and cases cited ; 1 Pars. Cont., 101.

For the reasons heretofore given, the judgment of general term, reversing that of special term, is affirmed. Judge Vories absent. The other judges concur.