384    SUPREME COURT OF MISSOURI,

State ex rel. Life Insurance Co. v. Allen.

# THE STATE ex rel. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY v. WILLIAM H. ALLEN et al., Judges of St. Louis Court of Appeals.

### In Banc, March 15, 1926.

1. **CERTIORARI: Merits of Case.** *Certiorari* to a court of appeals is an original proceeding, and general errors committed by that court in deciding a case appealed to it are not for consideration, but this court is confined to a conflict between the rulings of that court and previous controlling decisions of this court on questions arising out of the same or like facts, and will not extend the inquiry over the wider field afforded by an appeal directly to it from the judgment of a trial court.

2. ————: **Things Considered: Demurrer to Evidence.** Where the Court of Appeals sustained the trial court in overruling relator's demurrer to the evidence, this court, upon *certiorari* to that court, for the facts looks to the opinion of that court, and to any pleadings, instructions or written instruments referred to therein, and cannot review as upon appeal the evidence set forth in the abstract filed in that court.

3. **INSURANCE POLICY: Cancellation: After Death of Insured.** After the death of the insured a life insurance policy cannot be cancelled for fraud in procuring it. And an action brought on the policy by the beneficiary after the insured's death is not converted into a suit in equity by charges in a cross-bill that the insured obtained the policy by false and fraudulent representations as to her state of health and a prayer that it be cancelled, but the cross-bill should, upon motion, be stricken out.

4. ————: **Demurrer to Evidence: Misrepresentations in Application: Objective Examination of Physician: Cancer.** Notwithstanding the facts would have warranted the jury in finding that the insured was afflicted with cancer at the time she applied for the policy and that she had at that time reason to believe she was so afflicted, and in her answer stated that she had never had any symptoms of "cancer, tumors, enlarged glands or ulcers except as here stated," and notwithstanding numerous physicians whom she had consulted testified that by X-ray examinations, made previously to the application, she had cancer of the ovaries, and one of them testified that the presence of cancer cannot always be detected by the naked eye, and another that a fibroid is a tumor of the uterus and not

State ex rel. Life Insurance Co. v. Allen.

serious, and no fibroid was discovered, the Court of Appeals did not contravene any previous decision of this court in ruling that (a) the testimony of her sister that none of the doctors told her or the insured that there was anything serious the matter with her, and that one of them, who had made an X-ray examination of her a month after the application and discovered ovarian cancer of several months duration and had testified that fibroid was not serious and none was discovered, told insured that he was glad to tell her that there was nothing serious the matter with her; that (b) a letter from this same physician to another, introducing the insured and recommending her for an operation for fibroid; and (c) that the testimony of the medical examiner for the insurance company that he examined the insured at her home, found her to be a flabby woman well nourished, looked for tuberculosis, examined the heart, lungs and physical conditions, and recommended her for insurance, made a case for the jury, and that the demurrer to the evidence was properly sustained.

5. ———: ———: **Examination by Company's Physician: Contradictory of Proof of Death.** The Court of Appeals did not contravene any previous decision of this court in ruling that an objective examination of the insured by the medical examiner of the defendant company and his recommendation of the applicant for insurance based thereon, are competent as tending to contradict admissions made in the proof of death, but that such examination and recommendation were to be taken into consideration, along with other testimony contradicting the defensive allegations that the policy was obtained by false and fraudulent answers in the application, in determining whether the evidence made a case for the jury.

6. ———: **Misrepresentations: Tests: Instruction: Insurability at Delivery.** In an action on a life insurance policy, wherein the defense is that the policy was obtained by false and fraudulent representations made by the insured in her application, an instruction for plaintiff authorizing a recovery according to the stated terms of the policy "unless you further find from the evidence that the execution of said policy was procured by misrepresentations made by the insured to defendant or its agents of matters which actually contributed to cause her death," and that no misrepresentations in securing the policy are material unless it be found that the matters misrepresented actually contributed to produce her death, is not erroneous, where the evidence discloses no different condition in the insured between the date of the application and the date the policy was delivered, although the application, made a part of the policy, contained an agreement that the policy should take effect only in case it should be delivered while the insured was in the same condition of insurability shown in the application.

313 Mo. Sup.—25.

386 SUPREME COURT OF MISSOURI,

State ex rel. Life Insurance Co. v. Allen.

7. ———: ———: ———: ———: Burden: Warranties. Where there is no evidence of any difference in the condition of the insured between the date of the application and the date the insurance policy was delivered, an instruction telling the jury that the burden is on defendant to show that the insured made the misrepresentations set up as a defense; that the matters misrepresented actually contributed to cause her death, and that defendant would not have issued the policy had it known the same state of facts as claimed by its defense, is not erroneous. The condition in the application that the policy would be valid only if the insured at the time of the delivery of the policy was in the same state of insurability shown in the application, and acceptance of the policy upon such condition, did not constitute a warranty, but a representation, the falsity of which rendered the policy void only if the matter misrepresented actually contributed to the death of the insured.

8. ———: ———: Instruction: Caused or Contributed to Death. An instruction telling the jury that "in determining whether or not the matters misrepresented actually contributed to cause the death of the insured, you should not speculate or guess, but if you are unable to determine from the evidence whether or not her death was so caused, your verdict will be for plaintiff," is erroneous, where the affirmative defense was that the matters misrepresented actually contributed to cause her death, and the proof was that the cause of her death was "cerebral apoplexy, complicated by gastro-ovarian cancer of eighteen months' duration" and other evidence that cancer, while not the cause, actually contributed to her death. The instruction required the jury to find for plaintiff if they were unable to find that the matter misrepresented caused her death, and did not submit the question whether the matter misrepresented actually contributed to her death. It was therefore inconsistent with its own terms. It was inconsistent with other instructions given for plaintiff which submitted the question as being whether the matter misrepresented actually contributed to the death of the insured. It also was inconsistent with the allegation of the answer, which was, not that the matter misrepresented caused her death, but that it "directly contributed to her death," and in that respect violated the rule that an instruction must be within the purview of the pleadings and evidence. As under the evidence the jury might have been able to determine that the cancer actually contributed to the death of the insured, though not able to say that cancer caused her death, the instruction denied to defendant a defense both pleaded and expressed in the policy. And the Court of Appeals in approving said instruction contravened many decisions of this court condemning such instructions.

9.  **CERTIORARI: Conflict with Cases Not Cited.** The fact that relator in *certiorari* has not cited in his brief the cases of this court with which the opinion of the Court of Appeals approving an erroneous instruction conflicts, is immaterial. If the conflict exists, the opinion will be quashed. The writ having once issued, jurisdiction to discover conflicts is not restricted to cases cited.

10.  ———: **Instruction Not Considered.** An instruction to which no reference is made in the opinion of the Court of Appeals cannot be considered on *certiorari*.

11.  ———: **Evidence.** Where, the opinion of the Court of Appeals does not set out the "certain facts" offered to be proved by a witness, it cannot be ruled on *certiorari* that said court erred in approving a rejection of the testimony of the witness.

Certiorari, 11 C. J., Section 355, p. 200, n. 31. Courts, 15 C. J., Section 518, p. 1092, n. 63; p. 1093, n. 67. Life Insurance, 37 C. J., Section 155, p. 439, n. 16 New; Section 158, p. 441, n. 61, 61 New. Section 177, p. 455, n. 86, 87; Section 452, p. 653, n. 83. Trial, 38 Cyc., p. 1615, n. 19.

## *Certiorari.*

RECORD QUASHED.

*Leahy, Saunders & Walther* and *J. L. London* for relator.

(1)  The court erred in striking out defendant's cross-bill.  (a)  A motion to strike out may fill the office of a demurrer and be so treated, where it is, to all intents and purposes, a demurrer, and dispositive of the whole case, as a matter of law. State ex rel. Natl. Bank v. Ellison, 266 Mo. 423; State ex rel. v. Owens, 207 S. W. 243; Shohoney v. Railroad, 231 Mo. 148; McAllister v. Graham, 206 S. W. 394.  (b)  The cross-bill converted the action into an equitable action. Carter v. Ins. Co., 275 Mo. 84.  (2)  The court erred in overruling appellant's demurrer at the close of the whole case.  (a)  The assured, according to all the creditable evidence in the case, had cancer at the time she applied for insurance. Oglesby v. Railroad, 150 Mo. 137; Carter v. Current River Ry. Co., 156 Mo. 635; Guthrie v. Holmes, 272 Mo. 215.  (b)  The evi-

dence in the case showed conclusively that the assured at the time of the delivery of the policy was not in the state of insurability shown in the application. Burgess v. Pan-American Ins. Co., 230 S. W. 315; Guthrie v. Holmes, 272 Mo. 215. (c)   Proofs of death filed by a beneficiary of a life insurance policy which show that the assured died of a disease which he had at the time of his application are conclusive unless explained away or contradicted. (3) The court erred in giving and reading to the jury Instruction 1.  It disregards the question of the insurability and state of health of the assured at the time the policy was delivered, and considers only the defense of misrepresentation in procuring the policy.  Enloe v. Am. Car & Foundry Co., 240 Mo. 443; Bluedorn v. Mo. Pac. Ry. Co., 108 Mo. 439; Patterson v. Evans, 254 Mo. 293; State v. Stubblefield, 239 Mo. 526.   (4)   The court erred in giving and reading to the jury plaintiff's Instruction 2.  It disregards the defense that the assured was not in the state of insurability shown in the application, is misleading to the jury in singling out only the defense of misrepresentations and disregards the equally important defense of insurability herein mentioned.  Enloe v. Am. Car & Foundry Co., 240 Mo. 443; Bluedorn v. Mo. Pac. Ry. Co., 108 Mo. 439; Patterson v. Evans, 254 Mo. 293. (5)   The court erred in giving and reading to the jury plaintiff's Instruction 4.  Burgess v. Pan-American Life Ins. Co., 211 S. W. 114, 230 S. W. 315.   (6)   The court erred in giving and reading to the jury Instruction 5. Burgess v. Pan-American Life Ins. Co., 230 S. W. 315; Kern v. Legion of Honor, 167 Mo. 487.   (7)   Testimony regarding the examination of a doctor for an insurance company and the surrounding circumstances and facts, including the effect of the statements of the applicant, are admissible.  State v. Long, 257 Mo. 199.

*S. C. Rogers* for respondents.

(1) This court obtains the evidentiary facts from the appellate opinion. State ex rel. v. Allen, 250 S. W. 580; State ex rel. v. Cox, 250 S. W. 551. Except that any pleading, instruction or written instrument referred to may be considered. State v. Reynolds, 290 Mo. 362; State ex rel. v. Ellison, 223 S. W. 671. An alleged error not assigned or considered by the Court of Appeals will not be reviewed by the Supreme Court. State ex rel. v. Trimble, 250 S. W. 384; State ex rel. v. Allen, 240 S. W. 117; State ex rel. Light Co. v. Trimble, 262 S. W. 357; Hurlburt v. Mo. Pac. Ry. Co., 284 Mo. 397. (3) The only question to be considered is whether taking the facts as found by the Court of Appeals, its conclusions of law are in harmony with or contrary to the latest ruling of the Supreme Court. State ex rel. v. Trimble, 250 S. W. 384; State ex rel. Henry v. Allen, 263 S. W. 190; State ex rel. v. Trimble, 262 S. W. 357; State ex rel. v. Allen, 262 S. W. 43; State ex rel. v. Allen, 291 Mo. 206; State ex rel. v. Allen, 294 Mo. 214. (4) Report of relator's examining physician is sufficient contradiction of proofs of death and makes it a jury question. Keller v. Ins. Co., 198 Mo. 440; Burgess v. Pan-American L. Ins. Co., 230 S. W. 315; Natl. Bk. Com. v. Laughlin, 264 S. W. 706. Proofs of death are nothing more than opinion of a physician and entitled to no more weight than his testimony. 2 Bacon on Life & Accident Ins., p. 1600, sec. 65; Barker v. Met. Ins. Co., 198 Mass. 375. (5) Instruction 1 is correct. State ex rel. Jenkins v. Trimble, 291 Mo. 227; State ex rel. Ambrose v. Trimble, 263 S. W. 840; R. S. 1919, sec. 6142. (6) Speculate-or guess-Instruction 4 is proper. Griffith v. Cont. Cas. Co., 253 S. W. 1043. Relator cannot inject a new and entirely different theory in the case on appeal. Brunswick v. Standard Acc. Co., 278 Mo. 154; Paramore v. Campbell, 245 Mo. 287; Hurlburt v. Mo. Pac. Ry. Co., 284 Mo. 397.

LINDSAY, C.—The relator, under the writ of *certiorari* issued, seeks to quash the opinion of the St.

Louis Court of Appeals in the case of Oliver W. Mueller, Respondent, v. John Hancock Mutual Life Insurance Company, Appellant, 261 S. W. 709, wherein the Court of Appeals affirmed the judgment rendered by the trial court. The case as presented takes the form of an effort more to point out errors committed by the Court of Appeals, generally, than an effort to show conflict between the rulings thus made, and rulings of this court in previous and controlling decisions upon questions arising out of the same or like conditions of fact. The inquiry here must be confined within the limits appropriate to this original proceeding, and not extended over the wider field afforded by an appeal to this court.

The plaintiff sued as the beneficiary under an insurance policy upon the life of his mother, Laura Mueller. Application for the policy was made December 5, 1918; it was issued on December 28, 1918; and the insured died on March 4, 1919. The defense set up by answer and cross-bill, was, that the insured obtained the policy by false and fraudulent representations as to her state of health; that she represented herself to be in good health as far as she knew and believed, and had not been treated by a physician for nearly twenty-five years, whereas, in fact, during the year next before the making of the application, she had consulted with a large number of physicians in the city of St. Louis; and, that she knew at the time the policy was issued, she was suffering from cancer, the disease which directly contributed to or caused her death. Cancellation of the policy was asked under the cross-bill. The court sustained the plaintiff's motion to strike out the cross-bill; the case was heard as one at law; and the plaintiff had a verdict in his favor.

I. The Court of Appeals overruled the contention that the cross-bill converted the action into one in equity. This holding is in accord with the rulings of this court in Schuerman v. Insurance Co., 165 Mo. 641, and State ex rel. v. Trimble, 292 Mo. 371. Counsel for relator frankly

express doubt whether, under the facts in this record,
**Cancellation.**  the case was convertible into a suit in equity
by the cross-bill and prayer for cancella-
tion, and they further express the opinion that the doc-
trine set out in State ex rel. v. Trimble, supra, in which it
was held that an insurance policy cannot be cancelled aft-
er the death of the assured, is better doctrine than that
announced in Carter v. Ins. Co., 275 Mo. 84. It is sug-
gested, however, that the decision in Carter's case has not
been expressly overruled, and may be controlling upon the
question. It is true that Carter's case is not mentioned
in State ex rel. v. Trimble; but, in the latter, the rule an-
nounced in the Schuerman case was stated and expressly
adhered to, which necessarily overruled what was said
in Carter's case on that subject, at least beyond its close
application to the distinctive facts in that case. There is
no conflict between the ruling of the Court of Appeals
and the latest and controlling decision of this court, upon
the question presented by this cross-bill.

II.  The relator assails the correctness of the con-
clusion of the Court of Appeals, which sustained the trial
court in overruling the demurrer, offered at the close of
the case. Relator asserts that (1) according to all the
creditable evidence the assured had cancer
**Demurrer to**  at the time she applied for the insurance;
**Evidence:**
**Matter of Law.**  (2) that the evidence showed conclusive-
ly she was not, at the time of delivery of
the policy, in the state of insurability shown by the ap-
plication, and (3) that the proofs of death, which showed
that the assured died of a disease which she had at the
time of the application, are conclusive, unless explained
away or contradicted. For the facts we look to the opin-
ion of the Court of Appeals, and to any pleading, instruc-
tion, or written instrument referred to therein, and can-
not review as upon an appeal the evidence set forth in the
abstract filed in that court. [State ex rel. Dunham v.

Ellison, 278 Mo. 649; State ex rel. Raleigh Inv. Co. v. Allen, 294 Mo. 214.]

The finding is as follows:

"Plaintiff introduced the policy in evidence and rested.

"Defendant, to sustain the affirmative defense set up its answer, produced, among other witnesses, nine physicians for the purpose of establishing the fact that the deceased had cancer at the time the policy was issued, and which caused her death. The following facts appear from the testimony of these physicians:

"Dr. Garcia, on behalf of another insurance company, examined the deceased on January 30, 1919. At that time there was a blank filled out and signed, by Mrs. Mueller, the date being January 26, 1919. Upon objection this was stricken out and defendant saved objections. Mrs. Mueller was an unusually fine-looking woman, and of an unusual weight. Her general condition was good, and she weighed about one hundred seventy pounds, with broad shoulders, and was a strong, 'powerful-looking woman.' Defendant then offered to prove certain facts by this witness, which were objected to by plaintiff's counsel on the ground that it pertained to matters transpiring subsequently to the issuance of the policy. This objection was by the court sustained, to which defendant excepted. This witness stated that you cannot always detect the appearance of cancer with the naked eye.

"Dr. Fred B. Hall, an X-ray specialist, testified that on the 30th of September, 1918, Mrs. Mueller came to his office in company with her sister; that she brought a letter from Dr. Mills, asking that she be treated with the X-ray; that he treated Mrs. Mueller for cancer of the stomach. Mrs. Mueller told him at the time that she had been advised to be operated upon, but declined because her husband had been operated on for the same thing and died as the result of the operation; that Dr. Mills is associated with Dr. Soper; that at the time deceased came to him for treatment she made no complaints and did not

state her symptoms.  At that time Dr. Hall made no ex-
amination, but gave her the X-ray treatment, as suggested
in the letter from Dr. Mills.

"Dr. Englebach, a specialist in internal medicine, ex-
amined Mrs. Mueller on January 22, 1919.  He testified
that Mrs. Mueller consulted him for the purpose of se-
curing an opinion concerning herself; that Dr. Schnoebe-
len was associated with him at the time; that he examined
her and found she had a large abdominal mass, or tumor,
which they diagnosed as a malignant or ovarian cyst, a
cancer of the ovary.  Mrs. Mueller gave him a complete
history of her illness, as well as family history, which he
took down in writing.  There was another lady with Mrs.
Mueller at the time.  He then referred Mrs. Mueller to
another doctor for an operation for this tumor.  Mrs.
Mueller again visited his office on three or four occasions
following the date above mentioned.  An X-ray was made
on January 29, 1919, and from this examination he could
approximate that the cancer would have to have been
there a number of months to have grown to the size it was.
On cross-examination he stated that the tumor could be
felt, seen and palpated.  An X-ray was taken for the pur-
pose of ascertaining with what organ it was connected;
that tumor is just a generic term for any enlargement or
mass.  A malignant tumor is one that grows rapidly, in-
vades other tissues and produces sooner or later other
serious results.  A fibroid is a tumor of the uterus; that
no fibroid was discovered; that he thought this was cystic
tumor of the ovary; that a fibroid is a benigh tumor, not
serious.

"Dr. Soper, a specialist on diseases of the stomach
and intestines, saw Mrs. Mueller on December 31, 1917,
and on May 16, 1918.  Defendant offered to prove by this
physician that he examined her upon the two dates; that
he told her she had cancer, and she asked what she ought
to do.  This was objected to as a privileged communica-
tion, and such objection was sustained.

"Dr. Schnoebelen, who was associated with Dr. Engle-bach at the time the examination of Mrs. Mueller was made, corroborated Dr. Englebach in the main and stated that the final diagnosis of her case was ovarian cyst and climacteric; that you could not diagnose cancer by look-ing at the abdomen; that gastro-ovarian cancer means a malignancy involving the ovary and the stomach.

"Dr. Mills, a specialist in gastro-intestinal diseases, testified that he first met Mrs. Mueller on December 21, 1917, in the office occupied by himself and Dr. Soper. At that time she was accompanied by another woman. She came on two subsequent days for the purpose of an X-ray examination; that she also came on December 31st, fol-lowing, and on May 16th, September 12th, September 13th, September 14th, September 23rd, and December 17, 1918, making nine visits in all.

"Florence Barnholtz, a sister of Mrs. Mueller, iden-tified the signature of her sister on the application. She testified that her sister's health was good in 1917, so far as she knew; that in 1918 she had accompanied her sister to see Dr. Bartlett, Dr. Soper, Dr. Mills, Dr. Englebach, Dr. Hall, Dr. Baumgartner and Dr. Jonas; that in 1918 her sister complained of pain in her stomach. Mrs. Muel-ler was operated upon about two weeks before she died, on March 4, 1919; that none of the doctors at any time when she was with her sister told her (Mrs. Mueller) that she had anything serious the matter with her, nor did they ever tell the witness such; that Dr. Englebach stated to her that he was glad to tell her that there was nothing serious the matter with her sister.

"Dr. Jonas testified that he saw Mrs. Mueller on August 9, 1918, when she came to his office and com-plained of stomach trouble. He discussed an operation with her, but she told him at that time that her husband had been operated upon with such a bad result that she did not care to undergo an operation; that Mrs. Mueller was a stout woman, and it was very difficult in such a case to determine whether or not a cancer or tumor ex-

isted, although he discovered that Mrs. Mueller at the time had a swelling in the lower part of the abdomen.

"Upon being recalled, Dr. Mills testified that on the 13th day of September, 1918, an X-ray was made, indicating that Mrs. Mueller had carcinoma, which is a medical term for cancer; that he had carefully studied the history of Mrs. Mueller's case because it was a very unusual one.

"Dr. Becker, the examining physician for the defendant company, testified that he made an examination of Mrs. Mueller at her home. He found her to be a fleshy woman, well nourished. He spent about three-quarters of an hour in making the examination. He had been examining physician for this company for seventeen years; that it is his business to make an examination and satisfy himself that the applicant is a risk acceptable to the company; that he examined each person upon the basis of their answers. If they tell that they have certain diseases he looks for them, and if they do not tell him, and there is no evidence, he does not look for them; that he looked for tuberculosis, examined the heart, lungs, physical conditions, after which he recommended her for insurance.

"Emma Kortenzorfer testified that she knew Mrs. Mueller, and had known her since 1888; that she had talked with Mrs. Mueller about her health in 1916, 1917, 1918, and 1919; that Mrs. Mueller had complained about indigestion; that outwardly Mrs. Mueller appeared to be a normal woman.

"There were some women associates and friends of Mrs. Mueller who testified to belonging to the same bowling club to which Mrs. Mueller belonged, and that Mrs. Mueller bowled with them up to about a month prior to her death, and that her general appearance was good at that time.

"Dr. Gradwohl, a specialist in bacteriology and pathology, testified in answer to a hypothetical question, that he assumed from the question hypothecating the facts that deceased, Mrs. Mueller, died of cancer.

"Plaintiff, in rebuttal, introduced a letter from Dr. Englebach to Dr. John Young Brown, introducing Mrs. Mueller, and recommending her for an operation for a 'fibroid.'

"In the application for the policy deceased was asked if she had ever had any of the symptoms or diseases enumerated, of which more than forty were included in this question, among which were, 'cancer, tumors, enlarged glands or ulcers.' The answer given was: 'None, except as here stated.' Then followed: 'Typhoid fever twenty-five years ago: rec. comp.' When asked when and for what complaint she was treated, and by whom, she answered: 'Dr. B. M. Hypes, Grand and McRee. See 10.'

"The proofs of death as furnished by plaintiff, including the certificate of the attending physician, Dr. Baumgartner, showed that death was caused by cerebral apoplexy complicated by gastro-ovarian cancer of eighteen months' duration."

Relator asks this court to declare as a matter of law that the plaintiff is not entitled to recover. In this proceeding it must be made to appear that the opinion of the Court of Appeals in refusing to sustain a demurrer to the evidence conflicts with previous and controlling decisions of this court.

"We must therefore take the facts as stated in the opinion under review and ascertain whether or not upon those facts the Court of Appeals announced some conclusion of law contrary to the last previous rule of this court upon the same or a similar state of facts. It is not our province to determine whether the Court of Appeals erred in its findings of fact, or even in its application of rules of law to the facts stated in the opinion, but only whether upon such facts it announced a conclusion of law in conflict with the latest pronouncement of this court." [State ex rel. Raleigh Ins. Co. v. Allen, 294 Mo. l. c. 220; State ex rel. Continental Ins. Co. v. Reynolds, 290 Mo. 362.]

Beyond question the facts found by the Court of Appeals were such as would have warranted the jury in finding that the insured was afflicted with cancer at the time she applied for the policy, and also that she had reason to believe at that time she was so afflicted. As has been seen, the opinion after setting out the nature of the testimony of the various physicians who examined Mrs. Mueller, sets forth the testimony, negative in character, given by her sister as to what these physicians said or did not say concerning Mrs. Mueller's health, and also the testimony of some of her companions as to her appearance and bodily activity in the period down to about one month before her death. The opinion also makes reference to the letter written by Dr. Englebach to Dr. John Young Brown which was in evidence as an exhibit. This letter, dated February 3, 1919, or about two months after the time of the application for the policy, in addition to stating that Mrs. Mueller had a "fibroid," contained the following other statement: "Mrs. Mueller has received a number of opinions regarding a gastric condition in this case which we have not found to be present, but I advised her to go to you for operation, and if they decide to accept same I shall be pleased to forward you all the report made upon this case."

In addition to the foregoing, the conclusion of the Court of Appeals that the case was one for the jury, turned upon the further fact of the examination of Mrs. Mueller by relator's examining physician, and his resultant recommendation of her for insurance. This was held to be evidence tending to contradict the admissions made in the proof of death. The holding, relator asserts, is in conflict with the decision of this court in Burgess v. Pan-American Life Ins. Co., 230 S. W. 315. Conflict with the decision in Kern v. Legion of Honor, 167 Mo. 471, is also suggested. The Court of Appeals cites the decisions in Keller v. Home Life Ins. Co., 198 Mo. 440, and Burgess v. Pan-American Life Ins. Co., supra, in support of its con-

*Medical Examination by Defendant.*

clusion. In the Burgess case the evidence was being considered upon appeal. It was said at page 319:

"To say that there is no evidence worthy of consideration tending to make an issue on the condition of insured's health at the time of the application on February 5th, and on February 21st, is to eliminate all of the evidence of Dr. Mayfield, defendant's local examiner, who says that he discovered no condition that indicated disease." In that case the physician examined the insured for tuberculosis which was the disease stated to have caused the death of the insured. In this case the claim is that the examining physician was misled by the insured through her answer that she did not have cancer (among about forty diseases mentioned in the application), by her concealment of any knowledge gained from the physicians consulted by her, and by the fact that the cancer was internal, and not detectable without special examination. Conceding that the examining physician in this case did not have opportunity to observe equal to that had by the examiner in the Burgess case, yet, that does not make conflict as a matter of law between the conclusion of the Court of Appeals and the conclusion of this court in the Burgess case. In each case the weight to be given to the testimony of the examining physician was for the jury. In determining the issue raised by the demurrer, the Court of Appeals had the right under the decisions of this court in the Keller and Burgess cases, to consider that testimony along with the other evidence as tending to contradict, or to explain, what was contained in the proofs of death. In this connection it may be observed that in the written report of Dr. Becker, the examining physician, referred to in the opinion, after stating that he was "satisfied that everything had been fully stated as to the physical condition, habits and personal and family history of the appellant," he added the following in writing under the head of "Remarks:" "The weight of applicant is above the table, but that is with clothing on. Every member of the family is built along

these lines, no soft, flabby flesh, all muscular. I am personally acquainted with the family. Brother now insured in this Co." Under the rule in the Keller and Burgess cases the Court of Appeals was not required to disregard this testimony in considering the demurrer. It was within the province of that court as the appellate court of last resort to determine that under the evidence there was a case for the jury, and we cannot say upon the record it has made that its ruling is in conflict with a controlling decision of this court. Upon the issue under consideration no conflict is shown between the ruling of the Court of Appeals, and the ruling of this court in Kern v. Legion of Honor, 167 Mo. 471. In that case, in interpretation of the holding in a previous decision, it was said at page 489: "The purpose was to give full force and effect to the statute, and to hold that no misrepresentation, whether innocent or fraudulent, when based upon a warranty of truth by the terms of the policy or not, shall be a defense, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable." And in the same opinion it was said at page 487: "The test applied by the statute is whether 'the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable,' and the power to determine that question is vested by the statute in the jury, and not in the court." Yet, the power remained in the court to determine whether there was any evidence which authorized submission of the case to the jury. The Court of Appeals determined that issue adversely to relator, and we cannot say there was no evidence nor reasonable inference to be drawn therefrom so as to forbid submission to the jury.

III.   The opinion refers to certain numbered instructions given for the plaintiff in the original suit, of which defendant (relator) complained, and the approval of those

instructions is assigned here as error. Instruction num-
bered 1 was the instruction which au-
Misrepresentations.    thorized a recovery according to the
stated terms of the policy, subject to the condition, "un-
less you further find from the evidence that the execution
of said policy was procured by said Laura Mueller by mis-
representations made by her to defendant or its agents of
matters which actually contributed to cause her death,"
with further clause instructing that no misrepresentations
in securing the policy were material, unless it should be
found that the matters misrepresented actually contrib-
uted to produce her death. Relator contends that plain-
tiff's instructions proceeded upon the theory that the as-
sured's physical condition made no difference whatever,
and that plaintiff was entitled to recover unless defendant
showed that insured's answers were false and fraudulent.
Instruction 1 did not contain any reference to fraud, or
qualify the word "misrepresentations," in any way, that
is, it drew no distinction between representations in-
nocently made, or fraudulently made, nor did Instruction
2 submit such distinction.

The opinion states that relator's objection to Instruc-
tion 1 was, that it ignored the defense that the insured
was not in the state of insurability shown in the applica-
tion, at the time the policy was delivered, and dealt only
with the defense of misrepresentations in procuring the
policy. The relator in its answer pleaded the agreement
set forth in the application, attached to the policy, that
the policy should take effect only in case it should be de-
livered while the insured was in the same condition of in-
surability shown in the application. The Court of Ap-
peals in answer to the objection mentioned, said that the
record nowhere disclosed any different condition with
respect to the health of the insured between the date of
the application, and the date the policy was delivered. The
objection made and the conflict asserted to exist in sus-
taining plaintiff's Instruction 1 has a two-fold aspect.
First, it is urged that in making no requirement of find-

ing as to assured's state of insurability at the time the policy was delivered, it leaves out a material matter necessary to be submitted in an instruction governing the whole case, and in doing so, and in its approval by the Court of Appeals, there is conflict with the decision of this court in Enloe v. Car & Foundry Co., 240 Mo. 443, and certain other cases. The rule as there stated, at page 449, is as follows: "This instruction purported to cover the case and direct a finding. It should therefore embrace affirmatively or negatively, all legal defenses arising under the pleadings and proof." The holding by the Court of Appeals that the record disclosed no different condition with respect to the health of the insured between the date of the application and the date the policy was delivered brought its ruling upon that phase within the rule stated in Enloe's case.

It is further urged that the ruling of the Court of Appeals upon the question of the insured's state of insurability at the time of delivery of the policy is in conflict with the ruling of this court in Burgess v. Pan-American Life Ins. Co., 230 S. W. 315. In that case the insured's state of insurability at the date of delivery of the policy became the prime issue of fact in the case, because the policy was delivered on February 21, and the proofs of death stated that the insured was taken sick with his last illness "about February 20." The question was under consideration as upon demurrer to the evidence, upon the issue whether there was any substantial evidence to contradict the admission in the proofs of death, and to contradict the contention of defendant that the insured at the time was sick with his last illness. The situation there was stated at page 319: "The only question of serious weight in this cause is not whether the insured misrepresented his condition of health in the application and that the disease or ailment alleged to be misrepresented contributed to his death; but the real and serious question is: Was the insured in good health when the policy was delivered?" In that case there was the evidence tending to

show the intervention of insured's last sickness between the date of the policy, February 5th, and the date of its delivery February 21st, and the ruling was that under all the evidence the plaintiff was entitled to go to the jury. In view of the diverse situations presented we cannot hold that the ruling of the Court of Appeals is in conflict with the ruling in the Burgess case.

The same conclusion goes against the contention made as to Instruction 2 given for the plaintiff. That instructed the jury as to the burden of the proof in respect of the defense of misrepresentations, telling them that the burden rested upon defendant to show, by the greater weight of the evidence, that the insured did make such misrepresentations; that the matters misrepresented, if any, actually contributed to cause her death; and that defendant would not have issued the policy had it known the real state of facts as claimed by it in its defense. The condition in the application that the policy would be valid only if insured was at the time of delivery of the policy in the same state of insurability shown in the application, and acceptance of the policy thereunder, did not constitute a warranty, but under the statute (Sec. 6142, R. S. 1919) a representation, the falsity of which rendered the policy void only if the matter misrepresented actually contributed to the death of the insured. [Frazier v. Ins. Co., 161 Mo. App. 709.]

IV. The next contention is against Instruction 4 given for the plaintiff, which is an instruction discussed by the Court of Appeals. This instruction is as follows:-

"The court instructs you that in determining whether or not the matters misrepresented, if any, actually contributed to cause the death of said Laura Mueller, you should not speculate or guess, but if you are unable to determine from the evidence whether or not her death was so caused your verdict will be for the plaintiff." The instruction was approved as being within the ruling in Griffith v. Continental Casualty Co., 253 S. W. l. c. 1047.

The issue there under consideration was whether the fall of the insured by which he was killed, was accidental, or was intentional on his part. The burden was upon the plaintiff to show that the fall was accidental. It was held that the instructions given for defendant telling the jury that their finding could not rest upon conjecture or guess, and that if they could not find from the evidence whether the fall was accidental or intentional, they could not find for plaintiff in the full amount sued for, was not improper. In the instant case the instruction was given for the plaintiff, and dealt with the burden imposed upon defendant, under its affirmative defense that there were matters misrepresented by the insured, and that the matters misrepresented actually contributed to cause her death. It was a defense if the matter misrepresented caused her death, or, if the matters misrepresented actually contributed to that event. [Sec. 6142, R. S. 1919.]

The relator suggests that the ruling of the Court of Appeals approving this instruction conflicts with the ruling of this Court in Burgess v. Pan-American Ins. Co., supra, and other cases wherein it is held that it is error to give an instruction not based upon any evidence; that there is nothing speculative about the testimony; that all the testimony shows the insured had cancer at the time she applied for the insurance, and that all of the evidence shows she died of cancer, or at least cancer was a contributing cause thereto. In urging that view counsel discuss some evidence not referred to in the opinion, which, because of no such reference, cannot be considered here. But the statement in the proofs of death as to the cause of the death of the insured is given in the opinion. That statement is that the cause of her death was "cerebral apoplexy, complicated by gastro-ovarian cancer of eighteen months' duration." Under that evidence and other stated in the opinion we are not prepared to hold that the court was not justified in advising the jury that they were not to speculate or to guess whether or not the matter misrepresented actually contributed to cause the death

of the insured. But the instruction does not submit that question. The instruction as given, after warning the jury that they should not speculate or guess in determining whether the matter misrepresented, if any, *actually contributed* to cause the death of the insured, directs them to find for the plaintiff if they are unable to determine from the evidence whether or not her death was so *caused*. The instruction submitted as something which the jury might find indeterminable under the evidence, and thereon find for plaintiff, the question whether insured's death was *caused* by the matter misrepresented, if any, and not the question whether the matter misrepresented actually *contributed* to her death. The instruction was therefore within its own terms inconsistent, and was inconsistent with plaintiff's other instructions numbered 1 and 2, which submitted the question as being whether or not the matter misrepresented actually contributed to the death of the assured. It was inconsistent with the allegation of the answer, which was not that the matter misrepresented caused the death of the insured, but that it "directly contributed to her death." It thus authorized a verdict for plaintiff contingent upon inability of the jury to determine a question which was not the issue made by the pleadings. In that respect the instruction violated a rule many times stated by this court, that an instruction must be written within the purview both of the pleadings and the evidence. [Mansur v. Botts, 80 Mo. l. c. 658; Degonia v. Railroad, 224 Mo. l. c. 589; State ex rel. v. Ellison, 270 Mo. l. c. 653.] And "an instruction is equally faulty whether it enlarges or restricts the issues." [Iron Mt. Bank v. Murdock, 62 Mo. 70.] Under the evidence set forth by the Court of Appeals it is clear that the jury might have been able to determine that the cancer actually contributed to the death of the insured, while being unable to determine that it caused her death. The instruction placed upon the defendant a burden additional to that required under the pleadings, and under plaintiff's other instructions. The approval of the in-

struction in the form given conflicted with the rulings of this court in the cases above cited.

The fact that these cases have not been cited in the briefs filed is not material. In State ex rel. Vulgamott v. Trimble, 300 Mo. 1. c. 101, it was said:

"Our jurisdiction in this class of *certiorari* cases is dependent upon conflict or alleged conflict in opinions. However, we have ruled that when our writ has been issued, and the case is before us for determining the question of alleged conflict between the opinion under review, and the rulings of this court, we are not confined to the suggestions of conflict made by the relator, but on the contrary the court can and will quash the record of the Court of Appeals, if it conflicts with any ruling of this court of which the court has knowledge, although such case or ruling has not been suggested by relator, but has been suggested by counsel for respondents, or discovered by the court itself. [State ex rel. v. Ellison, 273 Mo. 1. c. 228; State ex rel. v. Reynolds, 286 Mo. 1. c. 223.]

"When we once acquire jurisdiction by reason of alleged conflicts we will consider all suggested conflicts, or conflicts not suggested but within the personal knowledge of the court. The purpose of this peculiar form of *certiorari* is to secure uniformity in opinions, and harmony in the law. So that, our review of this case may be more extended than is usual in most cases."

V. The relator has also assailed Instruction 5 for plaintiff. That instruction is not referred to in the opinion, and for that reason cannot be considered here.

Conflict or error is asserted in the ruling upon the rejection of testimony offered by the defendant. The opinion mentions the rejection of testimony of Dr. Garcia, and of Dr. Soper. The testimony of Dr. Garcia related to an examination for insurance in another company, made nearly two months after the application was made to the defendant. The opinion does not set out the "certain facts" offered to be proved by him, and we are unable to

determine the question of conflict. The testimony of several physicians was given for defendant without objection by the plaintiff so far as the opinion shows. It is not so stated, but apparently this was upon the ground that the insured was accompanied by her sister at these consultations. Thereby, it is claimed, the privilege was waived as to all the physicians. According to the statement contained in the opinion this may have been true as to the consultation with Dr. Soper, but since we cannot go to the bill of exceptions, and for lack of more definite information than is given of the circumstances, we cannot undertake to pass upon the question of conflict of rulings in respect to the testimony of Dr. Soper.

Upon the grounds above set forth the record of the Court of Appeals should be quashed. *Seddon, C.,* concurs.

PER CURIAM:—This case having been transferred to Court in Banc, the foregoing opinion of LINDSAY, C., in Division One, is adopted as the judgment of the court; *White, Atwood* and *Graves, JJ.,* concur.; *Blair, C. J.,* concurs in the result; *Walker, J.,* dissents; *Ragland, J., dubitante; Otto, J.,* not sitting.