Frances Bernice SNEAD, Appellant,

v.

UNION LIFE INSURANCE COMPANY, a Corporation, Respondent.

No. 23134.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1960.

Allebach & Ross, Robert L. Ross, J. F. Allebach, Albany, for appellant.

Max Sigoloff, St. Louis, E. L. Redman, Fred Kling, Albany, for respondent.

MAUGHMER, Commissioner.

This is a suit by the named beneficiary to recover the death benefit, with penalties, on a Missouri life insurance contract issued under the Stipulated Premium Plan by the defendant company. A jury was waived. The case was tried on a stipulation of facts with some documentary exhibits. The trial court made its findings of fact, conclusions of law, and entered judgment for the defendant. Plaintiff appealed.

It was stipulated that defendant is an Illinois corporation, is authorized to do business in Missouri and issue life insurance contracts under the Stipulated Premium Plan. On August 14, 1958, pursuant to nonmedical application by plaintiff, the company issued its life insurance contract on the life of herself and on the life of her husband, John Henry Snead. The Sneads were citizens and residents of Missouri. Under this contract the company agreed to pay $522 in the event of Mr. Snead's death while the policy was in force. The insured died September 29, 1958. Due notice thereof with proof of loss was received

by defendant on November 7, 1958. The premium payments were current.

The defense pleaded below and relied upon here is that in the application for the policy, plaintiff stated and represented that insured was in good health and had not, during the preceding five years, suffered any injury or illness, when in truth and fact insured was not in good health and had been suffering from illnesses, namely "Disease to his kidney, cystitis, upper respiratory infection, nephritis and prostatitis". Defendant further invoked the provision in the written application that "insurance under this policy shall not be effective on the life of any person who is not alive and in good health at the time this policy is delivered to the owner". The company asserted that the insured was not in good health at the time of delivery, presented evidence from its underwriter that if the facts had been revealed it would not have issued the policy, tendered refund of premiums and stood on the legal conclusion that therefore the contract was void ab initio and the company was not liable.

The trial court made the following findings of fact which are fully supported by the evidence and will be accepted as true in the determination of this appeal. Such findings, in addition to the facts already set forth herein, include:

"In the application upon which the policy was issued, and which, with the policy, constituted the entire contract, the plaintiff denied that the insured had suffered from any illness or injury during the last five years, and certified that insured was in good health. The insured was a retired laborer and did no work after August 8, 1958, and had not worked for some months prior thereto. He suffered, at the time the application for insurance was made, from a crippling disease, and since February, 1957, had been troubled with and treated for cystitis and prostatitis. He was treated by a physician who prescribed antibiotics, urinary antiseptics, analgesics and antipyretics, and insured was advised to observe limited diet and increase his fluid intake. He was given repeated urinalyses, and those tests at various times indicated a recurrent cystitis and mild nephritis. The insured was informed of the results of the examination showing prostatitis. The insured complained of pain and burning on micturition and frequent and slight nausea.

"The insured, prior to February 4, 1957, used Dr. C. N. Williamson of Gentry, Missouri, and that doctor is now deceased, and his records are not available. The insured was under the care of Dr. D. S. Merrill from the 4th of February, 1957, until the 29th of September, 1958. The insured died on September 29, 1958, at a rest home in Albany, Missouri, where he had been since September 1, 1958. The immediate cause of his death was acute coronary occlusion of ten minutes duration. The insured had never suffered nor was he ever known to have a cardiac condition before the one which caused his death. The operator of the rest home first observed the deceased when he moved to the home on September 1, and at that time the insured was weak, feeble and pale in color".

We now set forth the court's conclusions of law and judgment:

"The policy of insurance, sued upon in this case, was issued by the defendant company upon misstatements in the plaintiff's application for said policy.

"These misstatements were material representations and were within the personal knowledge of the insured. They amount to a legal fraud and the policy issued thereon is void.

"The Missouri Statutory law so provides (Sec. 377.340, V.A.M.S.) and most of the cases cited in all the briefs so hold.

"The judgment is against the plaintiff on her petition and in favor of the defendant. The costs are taxed against plaintiff and clerk is directed to pay the $18.00, tendered by defendant, to plaintiff".

By Section 510.310, subd. 4, V.A.M.S. as to cases tried upon the facts without a jury, we are directed to review the case upon both the law and the evidence, giving due regard to the opportunity the trial court had to judge the credibility of the witnesses and not to set aside the judgment unless clearly erroneous. Deffry v. American Life & Acc. Ins. Co., Mo.App., 193 S.W.2d 509, 510. As this case is reviewed we find no real dispute or controversy as to the material facts. Our decision involves determination of a law question.

■ Issuance of the policy, payment of premiums, death of insured and proof of loss having been admitted, proved and conceded, it is clear that the burden rested upon defendant company to prove its affirmatively pleaded defense under the "good health" provision of the policy and application therefor. Houston v. Metropolitan Life Ins. Co., 232 Mo.App. 195, 97 S.W.2d 856, 861; Pfingsten v. Franklin Life Ins. Co., Mo., 330 S.W.2d 806, 813.

■ It is, of course, true that the statute law of Missouri becomes an integral part of every life insurance policy issued in this state as a Missouri contract. Deffry v. American Life & Acc. Ins. Co., supra, 193 S.W.2d at page 511. Moreover, on page 1 of our particular insurance policy we find the following provision: "This policy is issued in accordance with the provisions of the Stipulated Premium Law, Sections 377.-200 through 377.460, Revised Statutes of Missouri, 1949". Section 377.340, V.A.M.S. (referred to by the trial court in its Conclusions of Law) reads: "No representation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter

misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and if so contributed in any case, shall be a question for the jury".

The question before us under the facts and issues here presented is what effect, if any, does Section 377.340, just set out, have on plaintiff's right to recover and upon defendant's affirmative defense.

It was held in New York Life Ins. Co. v. Ince et al., Mo.App., 27 S.W.2d 476, 479, that this so-called "Misrepresentation Statute" cannot be effectively applied to a policy during the lifetime of the insured, the court saying: "As to the applicability of this statute to an action to cancel a policy of life insurance during the lifetime of the insured, our Supreme Court, in the case of Pacific Mutual Life Ins. Co. v. Glaser, 245 Mo. loc. cit. 385, 150 S.W. 549, 550, 45 L.R.A. (N.S.) 222, said: 'It is apparent that this statute applies only to cases in which the "event on which the policy is to become due" has actually happened, and the liability of the insurer under the policy is the question to be determined. It was not intended to restrict the freedom of contract except in such cases as came within its provisions. The case before us is not an action to enforce liability under a contract of insurance. The event on which the obligation is made contingent had not occurred and therefore the rights of the parties are not affected by the statute, but are to be settled under the general law as though the statute did not exist.' "

It follows that an insurer may, while the insured is living, sue in equity to cancel a contract for misrepresentation as to a particular disease or good health generally without its entitlement to such relief being restricted, limited or even affected by the provisions of the Misrepresentation Statute.

The case of Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S.W.2d 333, strongly relied upon by defendant, is noteworthy chiefly for the holding that it is not required

that the misrepresentation be made willfully; that is, that the applicant knew it was false. The opinion at page 342 poses this question: " * * * Was it necessary that it should appear, *not only that the insured in fact had tuberculosis and died therefrom,* but also that she knew she had the disease, or from all the facts and circumstances must be presumed so to have known". (Italics added). The court concluded that it was not so necessary.

In Poignee v. John Hancock Mutual Life Ins. Co., Mo.App., 147 S.W.2d 677, 678, the policy carried this provision: "This policy shall not take effect unless upon its date the insured shall be alive and in sound health and the premiums duly paid". This clause is quite similar to the one relied upon by defendant in the instant case. The pleaded affirmative defense was that on the date the policy was issued insured was not in sound health but was suffering from diabetes mellitus, *which disease was a direct contributing cause of insured's death;* and that by reason thereof the policy was void. The court said at pages 680–681: "We think it was for the jury to determine the supremely important question in this case, namely, whether or not, on July 14, 1937, at the time of the issuance of the policy, the insured was suffering from diabetes mellitus, the disease which concededly caused his death". The Misrepresentation Statute (Sec. 5893, R.S.Mo.1939) was the same then as now.

In Truitt v. National Life & Accident Ins. Co., 236 Mo.App. 1036, 161 S.W.2d 683, 685, and in ruling a question similar to ours, this court said: "Under the provisions of this section (Misrepresentation Statute) unless it appears that at the time of the issuance and delivery of the policy that insured was afflicted with a disease or diseases which caused or contributed to her death, defendant cannot defeat recovery upon the theory of misrepresentation and, whether or not such was the fact, is a question for the jury, unless it be foreclosed by an admission of the plaintiff wholly unexplained

or uncontradicted by other evidence. Hodges v. American Nat. Ins. Co., Mo. App., 6 S.W.2d 72, 76".

The case of Blanke v. American Life & Accident Ins. Co., Mo.App., 230 S.W.2d 134, involved a Missouri life insurance policy issued on the Stipulated Premium Plan. The defense (after insured's death) was that the *illness causing his death* had its beginning prior to the issuance of the policy and these facts were withheld in the original application, the insured having therein stated that he was in good health. At page 139, the court said: "In the light of the statute, supra, much of the evidence introduced by defendant showing diseases other than those which contributed to cause the insured's death was immaterial. The precise question for us to determine in view of said statute is whether or not at the time the insured accepted the policy of insurance on February 11, 1939, he was then suffering from a disease or condition which actually contributed to cause his death".

■ Under the evidence and facts here the insured died on September 29, 1958, 52 days after issuance of the contract. The cause of death was "acute coronary occlusion of ten minutes' duration". There was no proof or suggestion that insured suffered from any cardiac disease or impairment prior to the day of his death. The evidence does show that before the policy was issued, insured suffered from arthritis, cystitis, prostatitis and had a kidney disease and impairment. There is not, however, even a contention that his arthritis or kidney condition (the only specific diseases or impairments he was shown to have had other than the frailties of 65 years) "actually contributed to the contingency or event on which the policy is to become due and payable", that is, to his death. Such being so, evidence of these noncontributing factors was not material under the statute, supra, and under the decisions interpreting and applying that statute.

It is defendant's position that insured was not in good health on August 8, 1958, by

reason of his kidney condition; that if this fact had been made known, its underwriters would not have issued the policy; that the contract was therefore obtained by misrepresentations material to the risk, namely, that insured was in good health and the result was a contract void ab initio. Had defendant moved to cancel the contract during insured's lifetime, doubtless, upon such a showing, it might have prevailed. But, we think, that after occurrence of the contingency insured against, defendant can avoid its contract only by showing that the matter misrepresented either caused or actually contributed to cause the contingency insured against which in this instance was death.

 The Misrepresentation Statute, supra, provides that the question of whether the matter misrepresented contributed to the event on which the policy is to become payable shall be a question for the jury. Yet the power remains in the court to determine whether there is any evidence which authorizes submission of the case to the jury. State ex rel. John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Allen et al., 313 Mo. 384, 282 S.W. 46, 50; Kirk v. Metropolitan Life Ins. Co. supra. The burden was on defendant to prove its affirmative defense. And as we review the evidence here in the light of our interpretation of the Misrepresentation Statute, we find no credible and admissible evidence that there was misrepresentation as to any impairment which caused or actually contributed to cause insured's death. Under these circumstances it is our duty to either enter or direct entry of that judgment which we believe the trial court under the law and evidence should have entered.

We are not convinced that this is a proper case for allowance of damages for vexatious refusal to pay and attorney fees incidental thereto.

For the reasons stated herein the judgment is reversed and the cause remanded with directions that the trial court enter judgment for plaintiff and against defend-

ant for the sum of $522, with interest thereon at 6 percent per annum from November 7, 1958, until paid, and for costs.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.